Filed 3/21/19; Certified for Publication 4/11/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G054763 |
| v. | (Super. Ct. No. 15CF1483) |
| BEAU JAMES DEARBORNE, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Kimberly Menninger, Judge. Affirmed and remanded with directions.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Kelley Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant of human trafficking (Pen. Code, § 236.1, subd. (b); count 1);[1] kidnapping to commit a sex offense (§ 209, subd. (b)(1); count 2); two counts of forcible rape in concert (§ 264.1, subd. (a); counts 3 & 4); two counts of forcible oral copulation in concert (§ 288a, subd. (d)(1); counts 5 & 6); second degree robbery (§§ 211/212.5, subd. (c); count 7); two counts of pimping (§ 266h, subd. (a); counts 8 & 11); and two counts of pandering (§ 266i subd. (a); counts 9 & 12). The jury also found that in the commission of the crimes charged in counts 3, 4, 5 and 6, defendant kidnapped the victim within the meaning of section 667.61, subdivisions (a) and (d)(2). Defendant admitted he had a prior strike (§§ 667, subds. (d), (e)(1), 1170.12, subds. (b), (c)(1)), a prior serious felony conviction (§ 667, subd. (a)(1)), and three prison priors (§ 667.5, subd. (b)).

The court sentenced defendant to state prison for 205 years to life plus 28 years. The sentence was comprised of the following: 50 years to life on the principal count — count 3 (rape in concert with kidnapping); a consecutive term of 50 years to life on count 4 (rape in concert with kidnapping); a consecutive term of 50 years to life on count 5 (oral copulation in concert with kidnapping); a consecutive term of 50 years to life on count 6 (oral copulation in concert with kidnapping); a consecutive term of 28 years on count 1 (human trafficking), which was the 14-year-midterm, doubled because of defendant's prior strike; a concurrent term of six years on count 7 (robbery), which was the three-year midterm doubled because of defendant's strike; two concurrent terms of eight years on counts 8 and 11 (pimping), which was the four-year midterm doubled because of defendant's strike; and a consecutive five-year term for the prior serious felony. The court imposed a seven-year term on count 2 (kidnapping to commit sex offense) but stayed execution of sentence pursuant to section 654. The court also stayed

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

execution of sentence on counts 9 and 12 (pandering) pursuant to section 654. The court struck the three one-year terms for the prison priors.

Defendant kidnapped a victim, raped her, then forced her into prostitution. On appeal defendant contends the evidence was insufficient to show forcible rape because the two rapes at issue were accomplished by threats, a lesser offense, not force. Defendant also contends he cannot be liable for rape in concert because there was no evidence the victim's "customer" (the john) was aware the intercourse was without the victim's consent. Thus, the argument goes, the john did not commit rape, and defendant, therefore, cannot have committed rape in concert with the john. We conclude substantial evidence supports the verdict on both fronts.

Defendant also argues there was instructional error. He contends the instructions on forcible rape were unclear, but he forfeited that objection by failing to raise it at trial. He also contends the jury should have been instructed on mistake of fact as to the john's belief about the victim's consent. That was not his theory at trial, however, and there was no evidence to support mistake of fact. To the contrary, the uncontroverted evidence was that the victim told the john she did not want to have intercourse. Accordingly, the court had no sua sponte duty to instruct the jury on mistake of fact.

Finally, defendant raises various sentencing issues. First, defendant contends the court misunderstood it had discretion to impose the sentences on counts 3, 4, 5, and 6 either consecutively or concurrently. We agree. Second, we agree with defendant that the sentence on count 8 (pimping) should have been stayed pursuant to section 654. Third, the people concede defendant is entitled to two additional days of credit for time served, and we concur. Fourth, defendant argues he was entitled to conduct credit. There, we disagree. Finally, in a supplemental brief defendant contends he is entitled to a remand so the court may exercise its newly granted discretion to strike

3

the five-year enhancement imposed pursuant to section 667, subdivision (a)(1). The People concede that issue, and we agree. We will remand the matter for resentencing.

FACTS

*Yolanda* (*Counts* 1-9)

In July 2015 the victim, Yolanda, and her boyfriend, who were homeless, were walking on either Beach Boulevard or Garden Grove Boulevard in Stanton at approximately 5:00 p.m., when defendant and his female companion, Destiny, offered them a ride. Yolanda reluctantly accepted and defendant dropped them off at a motel. A short while later, Yolanda and her boyfriend were "out and about" and got into an argument. Yolanda was walking back to the motel alone when she heard Destiny calling to her. Destiny invited Yolanda and her boyfriend to go with her and defendant to watch fireworks and offered to get them marijuana. Yolanda's boyfriend did not want to go but told Yolanda to go so she could get the marijuana. Yolanda went with defendant and Destiny.

After they watched fireworks and got marijuana, Yolanda told defendant and Destiny that she wanted to go home. But instead of taking Yolanda back to the motel, defendant drove to a parking lot in a loading dock area where they drank alcohol and smoked marijuana. Yolanda did not want to drink the alcohol but defendant made her drink it anyway. Yolanda again told defendant that she wanted to go home. Defendant told her she was not going home.

While they were in the car, Destiny began to orally copulate defendant. Yolanda told them "that was gross." At some point while Destiny was doing this to defendant, defendant began touching Yolanda's legs and breasts. Yolanda felt very uncomfortable and asked defendant to stop several times. Defendant ordered Yolanda to take off her clothes. When Yolanda refused, defendant told Destiny to get "the gun," and

4

Destiny complied. Defendant held the gun to Yolanda's side and said, "Bitch, take off your clothes." Yolanda got undressed. Yolanda was afraid of defendant because he had a gun and was bigger than her. The "gun" was actually a phone charger, but Yolanda believed it was a real gun. It was dark inside the car.

Defendant got out of the car and got into the back seat with Yolanda and put on a condom. He then ordered Yolanda to orally copulate him. She did not want to do this and told defendant she did not want to, but she complied "because of the gun that was in the car." Yolanda was crying and gagging as she orally copulated defendant. Defendant ordered Yolanda to lay down on the back seat and he raped her. Yolanda cried and told defendant to stop several times. When Destiny said it was her turn, defendant and Destiny pinned Yolanda in the back seat and had sex on top of her. Defendant ordered Yolanda to put her mouth on Destiny's breasts.

After that, defendant got out of the car, opened the trunk and told Yolanda that she was "going to get dolled up." He told her she was going to be an escort and "vaguely explained" to her what that meant. Yolanda told defendant that she did not want to have sex with other men or be an escort. Defendant ignored her. At some point, defendant ordered Yolanda to remove her engagement ring and necklace and told her that she belonged to him now. Destiny told Yolanda that if Yolanda tried to get help or run away, she would beat her. Yolanda was afraid of defendant and Destiny. Destiny dressed Yolanda in leggings and a see-through blouse and defendant drove them to Harbor Boulevard in Santa Ana, which was an area known for prostitution. Yolanda "made it clear [to defendant and Destiny] several times" that she did not want any of this to happen.

Yolanda and Destiny got out of the car and began walking down the street. When an Asian man (the john) approached them for sex, Destiny "was doing all the talking" and "agreed for" Yolanda. The john drove Yolanda and Destiny to a neighborhood and parked his minivan. As soon as they parked, Destiny ordered Yolanda

5

to remove her clothes and to give the john a condom. The john gave Yolanda $60.00 and she gave the money to Destiny. The john then orally copulated Yolanda. Yolanda did not want the john to do this to her. After the john finished orally copulating Yolanda, he put on the condom and had sexual intercourse with her. As he did so, Yolanda told Destiny that she did not want this to be happening. Yolanda testified that she told Destiny, who was in the car with her, "before it happened, after it happened, [and] during" that she did not want this to happen.

When the john was finished, he drove them back to the area where he had picked them up. Destiny called defendant and asked if they could return to his car because she was tired. Destiny and Yolanda then walked to where defendant was parked. It was approximately 1:00 a.m. They all fell asleep in the car and when Yolanda woke up in the morning, defendant and Destiny were still asleep. The car door was locked with a child lock so Yolanda could not open it from inside of the car. She slowly rolled down the window and opened the door from the outside. Yolanda ran to a nearby automotive repair shop and called 911. Yolanda did not try to escape earlier because she was afraid that if defendant caught her, she "would die."

*Alexandra E.* (*Counts* 10-12)

Alexandra E. was a prostitute in March 2013 when she met defendant. From that day on, Alexandra was in "a relationship" with defendant for the next two years. During that time, Alexandra worked as a prostitute for defendant. Defendant also had four or five other girls working for him. On occasion, defendant would hit Alexandra, and one time he gave her a black eye. On one occasion when Alexandra did not want to work as a prostitute because it was too cold, defendant pushed and kicked her out of the car.

6

*Caroline D.* (*Uncharged Event*)

Caroline D. testified about an uncharged event under Evidence Code section 1108. In May, 2009, she was in a rehabilitation center for alcohol abuse. One day she "fell off the wagon" and drank hairspray, which has alcohol in it, and checked herself out of the rehabilitation facility. She blacked out shortly thereafter and that night collapsed on the street. When she woke up, she was in a hotel room and defendant was on top of her, raping her. A woman was also present, and was holding Caroline down and also performing oral sex on her. Caroline blacked out again. When she awoke in the morning, defendant told her he was a pimp, that she would be working for him, and that she was essentially his prisoner. Caroline then went with defendant and the woman to a different location. Defendant made Caroline ingest crack cocaine. Defendant sodomized Caroline while Caroline screamed and cried. The woman told defendant to do it harder. Caroline was in pain. After the attack, Caroline attempted to jump off the ninth floor balcony, but defendant grabbed her and took her back inside. When a neighbor opened the door and asked what was going on, Caroline escaped.

## DISCUSSION

Defendant raises several issues falling into three broad categories: sufficiency of the evidence, instructional errors, and sentencing errors. We address each in turn.

*Sufficiency of the Evidence*

"When reviewing a challenge to the sufficiency of the evidence, we ask "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" [Citations.] Because the sufficiency of the evidence is ultimately a

7

legal question, we must examine the record independently for "'substantial evidence—that is, evidence which is reasonable, credible, and of solid value"' that would support a finding beyond a reasonable doubt." (*People v. Banks* (2015) 61 Cal.4th 788, 804.)

Defendant contends the evidence was insufficient as to counts 3 (forcible rape in concert; § 261.4, subd. (a)), 4 (forcible rape in concert), and 6 (oral copulation in concert by force or fear). Count 3 charged defendant with directly raping Yolanda. Count 4 charged defendant with raping Yolanda in concert with the john. Count 6 involved oral copulation in concert with the john.

*The Forcible Rape in Concert Counts*

As to the forcible rape counts, defendant contends the evidence was insufficient because the rapes were accomplished by a threat of force, rather than actual force.

"Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances:" "Where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§ 261, subd. (a)(2).) Section 264.1 provides enhanced penalties for rape in concert, "in which the defendant, voluntarily acting in concert with another person, *by force or violence* and against the will of the victim, committed an act described in Section 261, 262, or 289, either personally or by aiding and abetting the other person . . . ." (Italics added.) Defendant contends the requirement of force or violence under section 264.1 defines a subset of ordinary rape under section 261, subdivision (a)(2), in which rape may be accomplished by means of fear alone.

"The term 'force' as used in the rape statute is not specifically defined." (*People v. Griffin* (2004) 33 Cal.4th 1015, 1022 (*Griffin*).) "[N]o specialized legal meaning was ever intended for that term." (*Id.* at p. 1023.) Indeed, in *Griffin* our high

8

court specifically rejected a definition of force that was "'*substantially* different from or *substantially* greater than' the physical force normally inherent in an act of consensual sexual intercourse." (*Ibid.*) "Whereas, prior to the 1980 amendment of section 261, conviction of forcible rape required that the accused employ that degree of force necessary under the circumstances to overcome the victim's resistance [citation], under the modern rape statute, the jury no longer evaluates the element of force in terms of whether it physically prevents the victim from resisting or thwarting the attack. As one court observed, 'By eliminating the resistance requirement, the Legislature clearly intended to change prior law with regard to the use of force in rape.' [Citation.] '[T]he fundamental wrong at which the law of rape is aimed is not the application of physical force that causes physical harm. Rather, the law of rape primarily guards the integrity of a woman's will and the privacy of her sexuality from an act of intercourse undertaken without her consent. Because the fundamental wrong is the violation of a woman's will and sexuality, the law of rape does not require that 'force' cause physical harm. Rather, in this scenario, 'force' plays merely a supporting evidentiary role, as necessary only to insure an act of intercourse has been undertaken against a victim's will.'" (*Id.* at p. 1025.)

Accordingly, the *Griffin* court concluded, "the degree of force utilized is immaterial." (*Id.* at p. 1025.) "The Legislature has never sought to circumscribe the nature or type of forcible conduct that will support a conviction of forcible rape, and indeed, the rape case law suggests that even conduct which might normally attend sexual intercourse, when engaged in with force sufficient to overcome the victim's will, can support a forcible rape conviction." (*Griffin, supra,* 33 Cal.4th at p. 1027.)

This is just such a case. Here, defendant used his entire body to pin Yolanda down in a cramped area in the back seat of a car. The jury could certainly conclude that this use of force helped overcome Yolanda's lack of consent to accomplish the rape. In *Griffin*, the court found the element of force satisfied where the defendant

9

pinned the victim's arms down during intercourse. (*Griffin, supra,* 33 Cal.4th at p. 1029.) If pinning a woman's arms suffices, surely pinning her whole body does too.

Additionally, defendant pressed what Yolanda thought was a gun up against her side. That physical force, though not particularly powerful in pure physical terms, surely helped induce the fear needed to overcome Yolanda's will. (*See Griffin, supra,* 33 Cal.4th at p. 1028 ["'the reviewing court . . . looks to the circumstances of the case, including the presence of verbal or nonverbal threats, or the kind of force that might reasonably induce fear in the mind of the victim, to ascertain sufficiency of the evidence of a conviction [of forcible rape]'"]).

The same reasoning applies to count 4, involving the john. That rape also involved the john pinning Yolanda down in the back seat of a car. And the fear induced by defendant physically pressing a fake gun against Yolanda's side was still effectively overcoming her lack of consent to the intercourse.

*The John Counts*

As to the counts involving the john (4 and 6), defendant contends there was no evidence the john was aware of Yolanda's lack of consent, and consequently, there was no evidence the john was guilty of rape. (*People v. Mayberry* (1975) 15 Cal.3d 143, 155 ["If a defendant entertains a reasonable and bona fide belief that a prosecutrix voluntarily consented to accompany him and to engage in sexual intercourse, it is apparent he does not possess the wrongful intent that is a prerequisite . . . to a conviction of . . . [citation] . . . rape by means of force or threat [citation]"].) And if the john did not commit rape, the argument goes, defendant cannot be liable for committing rape in concert with him.

Aside from the logical flaw in this argument (which we address below), this argument simply does not comport with the evidence. Yolanda testified that she expressed to Destiny, who was in the front seat of the john's car, "before it happened,

10

after it happened, [and] during" that she did not want this to happen. A jury could certainly conclude from this evidence that the john was aware of her lack of consent. Defendant's only response is, "Yolanda never specified how she told Destiny; whether it was done in a manner in which the john could hear or done so in [a] way that would inform the john about her predicament." But if Yolanda said it loud enough for Destiny to hear in the front seat, it is reasonable to infer that the john, who was pressed up against her, could hear. Any doubt about that is not a *reasonable* doubt.

*Instructional Error*

Defendant raises two claims of instructional error. First, in connection with counts 4 and 6 (the john counts of forcible rape in concert and oral copulation by force or fear), he contends the court should have instructed the jury on mistake of fact because of the john's alleged mistake regarding whether Yolanda consented to intercourse. Second, in connection with counts 3 and 4 (forcible rape in concert), defendant contends the instructions were inadequate on the requirement of force. "[A] claim that a court failed to properly instruct on the applicable principles of law is reviewed de novo." (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.)

*Mistake of Fact*

Defendant did not rely on a mistake-of-fact defense at trial, nor did he request such an instruction. Nonetheless, "'"It is settled that in criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence"' and '"necessary for the jury's understanding of the case."' [Citations.] It is also well settled that this duty to instruct extends to defenses 'if it appears . . . the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.'" (*People v. Brooks* (2017) 3 Cal.5th 1, 73.)

11

It is equally well settled that, "[i]f believed by the fact finder, a defendant's honest and reasonable, albeit mistaken, belief in the victim's consent is a complete defense to a charge of . . . rape." (*People v. Brooks*, *supra*, 3 Cal.5th at p. 74.) Defendant, of course, cannot claim this defense personally, as he clearly knew Yolanda had not consented to acting as a prostitute. Nonetheless, defendant reasons that if the john could raise such a defense, then defendant cannot be found guilty of aiding and abetting a crime, as no crime occurred. We alluded earlier to the flaw in this argument, which we now explain.

As relevant here, rape under section 261, subdivision (a)(2), requires sexual intercourse against the victim's will accomplished by means of force or violence. The evidence supports those elements, as we have already seen. Because nearly every crime requires a mens rea, however, our courts have held that a defendant must have intended to have sex against the victim's will. (*People v. Mayberry*, *supra*, 15 Cal.3d at p. 154.) If a defendant held an honest and reasonable belief that the victim consented to sex, he cannot be found guilty of rape. The elements of section 264.1 are that the defendant must be acting in concert with another person when committing an act described in section 261, even if just as an aider and abettor.

All elements of section 264.1 are met here. Defendant acted in concert with Destiny and the john to accomplish sexual intercourse with Yolanda, against her will, by means of force or violence. What about the mens rea? Here is defendant's error: even if the john did not have the mens rea to personally be found guilty of rape, *defendant did*. This is not a situation where the rape of Yolanda was an innocent mistake. Defendant intended it. We see no reason, against all logic and common sense, to impute the john's mental state to defendant. In other words, the statutory elements are satisfied, and the implied mens rea requirement is also satisfied. Accordingly, the john's alleged mistake of fact would be no help to defendant. The court did not err in omitting the instruction.

12

Moreover, even if defendant could benefit from the john's mens rea, there was not substantial evidence that the john honestly and reasonably believed Yolanda consented. The john did not testify. The evidence defendant relies on is, essentially, the absence of any evidence from which the john could infer lack of consent. But Yolanda testified she communicated her lack of consent before, during, and after the intercourse. Between that, and the fact that Destiny was chaperoning her the whole time, the circumstances were not such that the john could entertain an honest and reasonable belief that Yolanda consented.

*Force*

The jury was instructed on rape in concert as follows: "The defendant is charged in Counts 3 and 4 with Committing Rape by Acting in Concert with Destiny G. in violation of Penal Code section 264.1. [¶] To prove that a defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant personally committed forcible rape and voluntarily acted with someone else who aided and abetted its commission; [¶] To decide whether the defendant committed rape, please refer to the separate instructions that I have given you on that crime. To decide whether the defendant or Destiny G. aided and abetted rape, please refer to the separate instructions that I have given you on aiding and abetting. You must apply those instructions when you decide whether the People have proved rape in concert. [¶] To prove the crime of rape in concert, the People do not have to prove a prearranged plan or scheme to commit rape."

The rape instruction, to which the rape in concert instruction refers, provided that rape can be accomplished by "force, violence, duress, menace, or fear of immediate and unlawful bodily injury to the woman or to someone else." It explained what each of those terms mean, including the following explanation of force: "Intercourse is accomplished by force if a person uses enough physical force to overcome the woman's will."

13

Defendant argues that instructing the jury that it had to find "forcible rape" is insufficient because the reference back to the rape instruction included language about not only force, but also threats of force and fear that would not satisfy the elements of section 264.1. In other words, defendant contends the instruction is unclear or confusing.

Defendant forfeited this argument by failing to object at trial. "A trial court has no sua sponte duty to revise or improve upon an accurate statement of law without a request from counsel [citation], and failure to request clarification of an otherwise correct instruction forfeits the claim of error for purposes of appeal [citation]." (*People v. Lee* (2011) 51 Cal.4th 620, 638.) As we already noted above, the word "force" does not have a technical legal meaning in this context, and is instead used in its ordinary sense. Accordingly, the court was only required to tell the jury that the rape had to be by force. It did so by telling the jury the rape had to be "forcible." If defendant wanted further clarification, he was obligated to object at trial.

*Sentencing Issues*

Defendant raises three sentencing issues. First, he contends his concurrent sentence on count 8 (pimping) should have been stayed pursuant to section 654 because he was already punished for the same activity in count 1 (human trafficking). Second, he contends the court incorrectly believed it had to run the punishment on counts 5 (oral copulation in concert) and 6 (same) consecutively to counts 3 (forcible rape in concert) and 6 (same). Third, defendant contends the court incorrectly counted his time-served credits and erroneously denied him conduct credits.

*Section 654*

Section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case

14

shall the act or omission be punished under more than one provision." "'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'" (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1253.)

"Decisions since *Neal* [*v. State of California* (1960) 55 Cal.2d 11] have limited the rule's application in various ways. Some have narrowly interpreted the length of time the defendant had a specific objective, and thereby found similar but *consecutive* objectives permitting multiple punishment. (E.g., *People v. Harrison* [1989] 48 Cal.3d 321, 334- 338 [multiple sex crimes each have the separate objective of achieving additional sexual gratification]; *People v. Perez* [1979] 23 Cal.3d [545,] 551-554 [similar]; *People v. Trotter* (1992) 7 Cal.App.4th 363, 368 ['each shot [fired at the same victim] evinced a separate intent to do violence'].) [¶] Other cases have found separate, although sometimes simultaneous, objectives under the facts. (E.g., *People v. Coleman* (1989) 48 Cal.3d 112, 162 [assault of robbery victim had separate intent and objective than the robbery]; *People v. Nguyen* (1988) 204 Cal.App.3d 181, 189-193, 196 [harming of unresisting robbery victim a separate objective from the robbery itself]; *People v. Booth* (1988) 201 Cal.App.3d 1499, 1502 ['dual objectives of rape and theft when entering the victims' residences' supported separate punishment for burglaries and rapes]; *People v. Porter* (1987) 194 Cal.App.3d 34, 37-39 [robbery and kidnapping the same victim for a later, additional, robbery had separate objectives].) Additionally, even *Neal* itself made clear that crimes of violence against multiple victims were separately punishable." (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211-1212.)

The jury was instructed on the following elements of human trafficking: "1. The defendant either deprived another person of personal liberty or violated that other person's personal liberty; [¶] AND [¶] 2. When the defendant acted, he intended to

15

commit or maintain a felony violation of Pimping and Pandering." The jury was instructed on the following elements of pimping: "1. The defendant knew that Yolanda S. . . . was a prostitute; [¶] AND [¶] 2. The money/proceeds that Yolanda S. . . . earned as a prostitute supported defendant, in whole or in part."

As charged under the facts of this case, the human trafficking and pimping were part of the same criminal "intent and objective" (*Neal v. State of California* (1960) 55 Cal.2d 11, 19), and thus the court was required to stay the sentence on the pimping count. The human trafficking charge literally has an element of an intent to pimp. There was only a single pimping activity relevant to counts 1 and 8. The human trafficking charge, therefore, necessarily was part of the same criminal "intent and objective" as the pimping charge. (*Ibid.*) The intent to pimp was not independent of or merely incidental to the human trafficking. It was an essential element of human trafficking, as charged in this case.

In arguing otherwise, the People rely on *People v. Deloach* (1989) 207 Cal.App.3d 323 (*Deloach*), which we find distinguishable. There, the defendant was charged with pandering, forcible oral copulation, oral copulation with a minor and sexual intercourse with a minor. (*Id*. at p. 331.) The defendant mother forced her daughter into prostitution by threatening to "bear [her] ass" if she refused. (*Id.* at p. 329.) The daughter went with a john who orally copulated her notwithstanding her protestations that she was scared and needed to leave. (*Id*. at pp. 329-330.) Addressing the application of section 654 to those facts, the *Deloach* court acknowledged that "It is necessarily part of the aim, objective and intent of a panderer that the person who is the object of the pandering become a prostitute." (*Id*. at p. 337.) Thus the pandering and unlawful sexual intercourse charges could not be separately punished. (*Id.* at pp. 337-338.) "On the other hand, the *forcible* oral copulations . . . were different in kind. While a panderer's specific intent may be to cause another to become a prostitute, the aim of forcing someone to

16

submit to sex acts against their will is not an element of pandering and is not necessarily or generally intended by the panderer. Although acts of prostitution — sex for money — may be incidental to and indivisible from the specific objective of pandering, *forcible* sex acts are not." (*Id*. at p. 338.) "The element of force or violence may, under the facts of a given case, render certain such criminal acts severable from the overall criminal transaction of which they are a part or during which they take place; such acts may, by virtue of their forcible or violent nature, constitute additional offenses for which additional or greater punishment may be given." (*Ibid.*)

The People vaguely urge us to conclude that because force was used here, a different criminal intent arose. But there is no broad rule that any crime involving force is exempt from section 654. Each case must be analyzed on its own facts. The present case is distinguishable from *Deloach* on the ground that, there, *forcible* sex acts were not necessarily entailed in pandering, even though the pandering itself was by means of threats of force. The mother in *Deloach* may have intended the daughter, once forced into prostitution, to willingly comply with a john's demands. In other words, her intent and objective was not necessarily to have her daughter subjected to forcible sex acts. Here, by contrast, defendant could not possibly have committed human trafficking without the intent to pimp. Again, the intent to pimp was an element of the human trafficking charge.

In this sense, human trafficking is analogous to a burglary charge, which involves entering a structure with the intent to commit another felony. In such cases, the defendant may not be punished for both the burglary and the crime that was intended. (*E.g. People v. Radil* (1977) 76 Cal.App.3d 702 [burglary with intent to assault]; *People v. McElrath* (1985) 175 Cal.App.3d 178, 191 [burglary with intent to commit sex offense]; *People v. Jaramillo* (1962) 208 Cal.App.3d 620 [burglary with intent to commit theft].) Accordingly, the human trafficking and pimping constituted a single course of

17

conduct with one and the same intent and objective, and thus the court was required to stay the punishment for the pimping charge.

*The Court's Discretion to Sentence Count 5 Concurrently with Count 3 and Count 6 Concurrently with Count 4*

Next, defendant contends the court erred in sentencing him consecutively on counts 3 (forcible rape in concert), 4 (forcible rape in concert [with the john]), 5 (oral copulation in concert) and 6 (oral copulation in concert [with the john]) based on its comment that they are "required to be consecutive," and "[t]here's no discretion." The People acknowledge the court's assertion was incorrect. It did, in fact, have discretion to run counts 3 and 5 concurrently, and counts 4 and 6 concurrently. Nonetheless, the People argue we should affirm on the ground that the record makes clear the court would have run them consecutively regardless, and thus to remand would be "an idle act." We conclude a remand is appropriate.

Under section 667.61, subdivision (i) (the One Strike Law), the court is required to impose consecutive sentences for multiple violations where "the crimes involve separate victims or involve the same victim on separate occasions as defined in subdivision (d) of Section 667.6."[2] Section 667.6, subdivision (d), provides, "In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions."

---

[2] The One Strike Law imposes a sentence of either 15 or 25 years to life for certain enumerated sexual offenses committed under specified aggravating circumstances. (§ 667.61, subds. (a) (b).)

18

In applying this standard, courts have held, for example, the offenses of placing a finger in the victim's vagina, kissing her genitals and then placing his penis in her vagina were but a single occasion. (*People v. Solis* (2012) 206 Cal.App.4th 1210, 1216-1217 (*Solis*), discussing *People v. Corona* (1988) 206 Cal.App.3d 13, 15-16.) Similarly, where a defendant raped the victim, then "'got off of her, twisted her by the legs violently, and orally copulated her,'" the offenses occurred on a single occasion. (*Solis,* at p. 1217, discussing *People v. Pena* (1992) 7 Cal.App.4th 1294, 1299.)

In contrast, where the offenses are interrupted by the defendant's non-sexual activity, they occur on a separate occasion. (*Solis, supra,* 206 Cal.App.4th at pp. 1217-1218.) Where a defendant left a car after a bout of sexual assault, but returned 15 minutes later and raped the victim a second time, the second rape occurred on a separate occasion. (*Id.* at pp. 1216-1217, discussing *People v. Corona, supra,* 206 Cal.App.3d at pp. 17-18.) Where the defendant moved the victim from one place to another, and also stopped an assault to listen to the victim's answering machine before resuming, the offenses occur on separate occasions. (*Solis,* at pp. 1217-1218, discussing *People v. Plaza* (1995) 41 Cal.App.4th 377, 380-381.) Where the defendant's assault was interrupted by the outside event of an observer driving by, but then resumed the assault, it indicated reflection by the defendant, and the second assault occurred on a separate occasion. (*Solis,* at p. 1219, discussing *People v. King* (2010) 183 Cal.App.4th 1281, 1235.)

Here, the evidence does not reveal any significant break between defendant forcing Yolanda to orally copulate him and then proceeding to rape her. Likewise, the evidence does not reveal any significant break between the john doing the same. The People concede as much.

19

We disagree that the court's exercise of its discretion regarding whether to run the counts concurrently is a foregone conclusion. The People rely on the fact that the court recited aggravating factors in justifying the various sentencing decisions it made. However, the court did not run all of the counts consecutively, and the court selected the midterm for several of the offenses. In other words, the court was not uniformly imposing the maximum possible punishment, but instead exercised its discretion. We cannot say with any certainty how the court would have decided to punish defendant if it had been aware of its discretion to run counts 3 and 5, and 4 and 6, concurrently. Accordingly, we will remand for resentencing. (*See People v. Brown* (2007) 147 Cal.App.4th 1213, 1228 ["Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing"].)

*Credits*

Finally, defendant contends the court erred in allotting credits for time served and good conduct. The People concede that defendant is entitled to two additional days of credit for time served. Defendant was arrested on July 5, 2015. He was sentenced on March 16, 2017. The sentencing court should give credit for the day of arrest, the day of sentencing, and all days in between. (*People v. Bravo* (1990) 219 Cal.App.3d 729, 735.) There are 621 days between July 5, 2015 and March 16, 2017, when the days of arrest and sentencing are included. Defendant was given 619 days of credit. Accordingly, appellant is entitled to two additional days of credit for actual time served.

Where the parties differ is whether defendant is entitled to conduct credits. The court held he is not entitled to conduct credits. The People contend the court was correct, relying on section 667.61, the One Strike Law, which says nothing about credits.

20

A prior version of the One Strike Law allowed up to 15 percent of actual credits as conduct credits, but the Legislature amended the statute in 2006 by removing that provision. (Stats. 2006, ch. 337, § 33.) The People argue this evinces an intent to eliminate conduct credits for violations of the One Strike Law. Defendant contends that in the absence of any express statement in section 667.61, the issue is governed by section 2933.1, which limits conduct credits to 15 percent for convictions involving violent felonies.

The court in *People v. Adams* (2018) 28 Cal.App.5th 170 recently addressed this issue and sided with the People. We concur in its analysis. The court reasoned: "Section 667.61 was amended in 2006 . . . to eliminate the existing section 667.61, subdivision (j) and any reference to presentence conduct credits. [Citation.] It is uncertain on its face whether the amendment was intended to eliminate presentence conduct credit for defendants sentenced under section 667.61, or to authorize full conduct credit under section 4019. We turn, therefore, to the legislative history. Committee reports evidence the Legislature's intent to eliminate conduct credit for defendants sentenced under section 667.61, the so-called 'One-Strike Law.' The Senate Committee on Public Safety's analysis of Senate Bill No. 1128 (2005-2006 Reg. Sess.) unambiguously states: 'Elimination of Sentencing Credits for One-Strike Inmates [¶] Existing law provides that a defendant sentenced to a term of imprisonment of either 15 years to life or 25 years to life under the provisions of the "one-strike" sentencing scheme shall not have his or her sentence reduced by more than 15% by good-time/work-time credits. [Citation.] [¶] This bill eliminates conduct/work credits for inmates sentenced under the one-strike law.' (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1128 (2005-2006 Reg. Sess.) as amended Mar. 7, 2006, p. N, underscoring omitted; accord, *id.* at p. W ['This bill eliminates sentencing credits that under existing law can reduce a defendant's minimum term by up to 15%' (underscoring omitted)]; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1128 (2005-2006

21

Reg. Sess.) as amended May 26, 2006, pp. 8-9 [Sen. Bill No. 1128 eliminates eligibility 'for credit to reduce the minimum term imposed']; Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis 3d reading analysis of Sen bill No. 1128 (2005-2006 Reg. Sess.) as amended May 30, 2006 p. 9 [same].) In Couzens and Bigelow, Sex Crimes: California Law and Procedure (The Rutter Group 2015) paragraph 13:15, page 13-78, the authors conclude: 'Section[] . . . 667.61 (One Strike law) . . . [was] amended in 2006 to eliminate the provision that allowed such crimes to accrue 15% conduct credits, whether before or after sentencing[.] Now there are no conduct credits allowed against the minimum term.' We hold, therefore, that defendants given indeterminate terms under section 667.61 are not entitled to any presentence conduct credit." (*Id*. at p. 182.)

*Senate Bill 1393*

Effective January 1, 2019, section 1385 was amended to eliminate the prohibition against striking a five-year enhancement for a prior serious felony under section 667. The result is courts now have discretion to strike a five-year enhancement. The amendment applies retroactively to all cases not final on its effective date. (*People v. Garcia* (2018) 28 Cal.App.5th 961, 973.) The People concede the amendment applies retroactively here and requires us to remand for the court to exercise its discretion. We agree.

DISPOSITION

The judgment of conviction is affirmed. The matter is remanded for resentencing to allow the court to exercise its discretion in determining: (1) whether to run the sentences for counts 3 (forcible rape in concert) and 5 (oral copulation in concert) concurrently or consecutively; (2) whether to run the sentences for counts 4 (forcible rape in concert [with the john]) and 6 (oral copulation in concert [with the john]) concurrently or consecutively; and (3) whether to strike the five-year enhancement pursuant to section

22

1385. The court is also directed to stay execution of sentence on count 8 (pimping) pursuant to section 654, and to grant defendant two additional days of presentence custody credit.


IKOLA, J.

WE CONCUR:


ARONSON, ACTING P. J.


FYBEL, J.

Filed 4/11/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BEAU JAMES DEARBORNE,<br><br>    Defendant and Appellant. | G054763<br><br>(Super. Ct. No. 15CF1483)<br><br>O R D E R |

The Office of the Orange County District Attorney requests that our opinion filed on March 21, 2019, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.

IKOLA, J.

WE CONCUR:

ARONSON, ACTING P. J.

FYBEL, J.