Filed 9/21/21  P. v. Cruz CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BONIFACIO ANDRES CRUZ,<br><br>    Defendant and Appellant. | E074038<br><br>(Super.Ct.No. INF1402747)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  James S. Hawkins, Judge. (Retired Judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed in part, vacated in part, and remanded with directions.

Melissa Hill, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Kristine A. Gutierrez and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Bonifacio Andres Cruz of multiple sex offenses against his partner's granddaughter, Jane Doe. Cruz argues that the trial court abused its discretion by (1) limiting the use of third party culpability evidence and (2) excluding other evidence of Doe's relationship with an adult male. He also argues that the court erred by imposing mandatory full consecutive sentences for two offenses under Penal Code section 667.6, subdivision (d). (Unlabeled statutory citations refer to the Pen. Code.) We conclude that the court erred by sentencing Cruz under section 667.6, subdivision (d), and we consequently vacate his sentence and remand for resentencing. We otherwise affirm the judgment.

BACKGROUND

Doe lived in her grandmother's home from 2011 to 2014, when Doe was roughly eight to 11 years old. Cruz was her grandmother's long-term partner and also lived in the home. Cruz was the closest thing Doe had to a father. Doe, her mother, and Doe's two younger sisters slept in the home's only bedroom. Doe's grandmother and Cruz slept in the living room.

Doe's mother worked "in the fields" during the day, and starting around December 2013, she also worked nights at a resort. Doe's mother moved in with her partner in June 2014. She took one of Doe's sisters with her in June; Doe and her second sister remained at Doe's grandmother's home for another month or so. In July 2014, Doe and the second sister also moved into the mother's partner's home.

Juan Perez rented a room from Doe's mother's partner. Doe was visiting that home in June 2014 when Perez touched her breasts and genitals over her clothes. He did

2

not penetrate her. Doe's sister was with Doe during the incident, and Doe immediately told her sister to get their mother. Perez was chased out of the house, and her mother called the police. Perez pled guilty to one count of lewd act on a child under age 14. (§ 288, subd. (a).)

On September 25, 2014, when Doe was 11 years old, Doe's mother took Doe to a clinic, and a urine test revealed that Doe was pregnant. Doe's mother reported that Doe had not menstruated for roughly four months.

A forensic interviewer questioned Doe the next day. The prosecutor played the video recording of that interview for the jury. Doe told the interviewer that Cruz had touched her all over her body and had impregnated her. Cruz had also showed Doe a movie in which nude people were kissing on a bed, and he showed her a picture on his phone of two nude women kissing. The first time he touched her, they were in the kitchen, and he put his hand under her clothes and touched her genitals. She also remembered that when she was nine or 10 years old, he came into the bedroom, touched her legs under the blanket, and tried to pull her shorts down. He stopped because her grandmother came home. Doe described another incident that occurred when she was 11 years old, and she and her sister were staying with their grandmother after their mother had moved out. Cruz made her touch his penis, touched the outside of her genitals with his penis, and kissed her chest and neck. Doe described yet another incident that occurred about two weeks later. That time, Cruz penetrated her vagina with his penis. He grabbed her hands hard to keep her still and moved his body up and down. Cruz had

3

intercourse with her again during the last week that Doe lived with her grandmother. After he penetrated her that time, he told her a "liquid" had "gone out."

Doe was 16 years old when she testified at trial. Her trial testimony was largely consistent with her forensic interview statements. She said that Cruz first sexually abused her when she was seven years old. The abuse occurred in the bedroom at her grandmother's home and mostly at night. During the first incident of abuse, Cruz touched Doe all over her body, including on her breasts and thigh area. There were a few more incidents of touching only, but when she was nine years old or so, he started to do more. She recalled one night when he touched her breasts, kissed her neck, and vaginally penetrated her with his penis. Her sisters were asleep in the same bed where the abuse occurred. Cruz would usually pull her by her legs down to the edge of the bed. He had intercourse with her on four or five more occasions.

Doe also testified about the incident when she was 11 and her mother had already moved out. Cruz touched her genitals with his penis but did not penetrate her, made her touch his penis, and kissed her neck. The last time Cruz had intercourse with her was approximately two weeks later, before Doe went to live at her mother's partner's home. On that occasion, Cruz told her that "something" had come "out of his penis," and the "liquid had gone somewhere."

The prosecutor showed the jury the video recording of Cruz's interview with law enforcement. Cruz denied having intercourse with Doe or impregnating her. He admitted to once touching Doe inappropriately when she was sleeping.

4

Doe was initially scheduled to have an abortion at a clinic on September 30, 2014. An ultrasound performed at that appointment indicated that the fetus was 26 weeks old. The clinic declined to perform the abortion because of the fetus's age. In October 2014, Doe underwent an abortion procedure called an "induction termination" at a hospital. The attending physician who oversaw the procedure estimated that conception occurred sometime around the end of March to the beginning of April 2014.

A criminalist analyzed DNA samples from Doe, Cruz, and the fetus. The criminalist calculated a "likelihood ratio" for Cruz's paternity. It was 72 million to 6.1 billion times more likely to see the fetal DNA profile if Doe and Cruz were the parents, as opposed to Doe and a random person. The criminalist opined that the results were "strong evidence" that Cruz was the father of the fetus. Cruz's DNA expert opined that if relatives of Cruz were included as possible sources of the fetus's DNA profile, the likelihood ratio of Cruz's paternity would change substantially. The rarity of someone other than Cruz being the father would be "much less."

After Doe's abortion procedure, she started getting into trouble. In 2015 and 2016, she admitted to receiving stolen property, delaying or obstructing a peace officer, and petty theft. In October 2016, she lied to her foster mother to explain her absence from school. Doe concocted a story about a strange man sexually assaulting her at the park. When Doe's foster mother reported the alleged assault to law enforcement, Doe repeated the lie to officers. She later admitted to the juvenile court that the story was untrue. In July 2019, Doe admitted to taking someone's vehicle.

The jury convicted Cruz of one count of forcible rape, one count of aggravated sexual assault (forcible rape) of a child under age 14, three counts of lewd act on a child under age 14, and three counts of forcible lewd act on a child under age 14.[1] (§§ 261, subd. (a)(2), 269, subd. (a)(1), 288, subds. (a), (b)(1).) As to the forcible rape count, the jury also found true that Cruz had personally inflicted great bodily injury and that the victim was under age 14. (§ 667.61, subds. (d)(6), (j).) The court sentenced Cruz to life in prison without the possibility of parole on the forcible rape count, another indeterminate term of 15 years to life on the aggravated sexual assault count, and a total determinate term of 45 years on the remaining counts.

## DISCUSSION

### I. *Limitation on the Third Party Culpability Evidence*

Cruz moved to admit the evidence that Perez had abused Doe as third party culpability evidence. The trial court admitted the evidence but only for purposes of the lewd act counts. Cruz argues that the court abused its discretion and violated his constitutional rights by limiting the use of the evidence. He asserts that the evidence was also relevant to the rape counts. We disagree.

"Evidence that raises a reasonable doubt as to a defendant's guilt, including evidence tending to show that another person committed the crime, is relevant." (*People v. Brady* (2010) 50 Cal.4th 547, 558 (*Brady*).) "At the same time, we do not require that

---

[1] We occasionally refer to "the rape counts," meaning (1) the forcible rape count and (2) the aggravated sexual assault count based on the underlying offense of forcible rape.

6

any evidence, however remote, must be admitted to show a third party's possible culpability." (*People v. Hall* (1986) 41 Cal.3d 826, 833 (*Hall*).) "[E]vidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime." (*Ibid.*) We review the court's exclusion of third party culpability evidence for abuse of discretion. (*Brady*, *supra*, at p. 558.)

The court did not abuse its discretion by limiting the use of the evidence concerning Perez. Perez touched Doe's breasts and genitals when Doe was visiting her mother's partner's home. That occurred when Doe's sister was in the same room, and Doe immediately told her sister to get their mother. But there was no direct or circumstantial evidence linking Perez to rape. Indeed, Doe said that Perez did not penetrate her. The evidence that Perez had an abnormal sexual interest in Doe and might have had access to her at some point during the relevant time period amounted to nothing more than motive and opportunity evidence. "[E]vidence that another person had a motive or opportunity to commit the crime, without more, is irrelevant because it does not raise a reasonable doubt about a defendant's guilt." (*Brady*, *supra*, 50 Cal.4th at p. 558.)

Further, the court did not violate Cruz's constitutional rights by limiting the use of the evidence concerning Perez. Cruz relies on *Holmes v. South Carolina* (2006) 547 U.S. 319 (*Holmes*) to show a constitutional violation, but that case does not assist Cruz. *Holmes* held that a state court rule violated the defendant's right to present a complete

7

defense by excluding third party culpability evidence solely on the basis of the strength of the prosecution's case. (*Id.* at p. 331.) Specifically, the state court erroneously concluded that "'where there is strong evidence of [a defendant's] guilt, especially where there is strong forensic evidence, the proffered evidence about a third party's alleged guilt' may (or perhaps must) be excluded." (*Id.* at p. 329.) The *Holmes* court reasoned that "by evaluating the strength of only one party's evidence, no logical conclusion can be reached regarding the strength of contrary evidence offered by the other side to rebut or cast doubt." (*Id.* at p. 331.) And the third party culpability evidence in *Holmes* was strong: Besides the evidence placing the third party in the victim's neighborhood at the relevant time, there was evidence that the third party had either admitted to the crimes or had claimed the defendant was innocent, and one witness refuted the third party's alibi. (*Id.* at p. 323.)

In this case, there is no indication that the court relied solely on the strength of the prosecution's case to limit the use of the third party culpability evidence, so the court's ruling does not run afoul of *Holmes*. Moreover, there was no evidence that Perez admitted to raping Doe, like the evidence linking the third party in *Holmes*. And the rule announced by our Supreme Court in *Hall*—that there must be some direct or circumstantial evidence linking the third party to the crimes—was implicitly approved in *Holmes*. (*Holmes*, *supra*, 547 U.S. at p. 327 & fn. * [noting that similar rules are "widely accepted," and citing *Hall*, *supra*, 41 Cal.3d at p. 833].) Accordingly, nothing in *Holmes* demonstrates that the trial court violated Cruz's right to present a defense.

For all of these reasons, the court did not abuse its discretion or violate Cruz's constitutional right to present a defense by limiting the use of the third party culpability evidence.

II. *Evidence of Doe's Relationship with an Adult Male*

Cruz argues that the court abused its discretion and violated his constitutional rights by excluding evidence of Doe's relationship with another adult male, Ezras Lopez. The argument lacks merit.

A. *Additional Background*

At the hearing on Cruz's motion to admit the evidence related to Perez, Cruz orally moved to admit evidence of Doe's relationship with Lopez. The court permitted Cruz to question Doe about her relationship with Lopez. She said that she met Lopez shortly after her abortion in October 2014. Lopez was her mother's partner's half-brother. Lopez looked like he was 18 or 19 years old, but he never told Doe his age. She liked Lopez, and they started a relationship in the fall of 2014. They talked and kissed "and stuff like that," but she initially did not recall any other sexual activity with him. Lopez did not force her into anything. He "left" in early 2015, and she heard her mother say something about the police arresting him.

After the prosecutor showed Doe a report of her 2015 statement to law enforcement, Doe recalled that she and Lopez had intercourse one time. But Doe said in her 2015 statement that they had intercourse three times. She did not recall three times, and she did not recall telling the officer that it was three times. After establishing that the relationship had occurred four years earlier, the prosecutor asked Doe: "It's not that three

times didn't happen. You only specifically recall one time four years later?" Doe replied: "Yes."

Cruz argued that the evidence about Lopez was relevant to whether Cruz used force or fear against Doe. He also argued that the evidence was relevant to Doe's credibility because her statements were inconsistent.

The People argued that the evidence should be excluded as irrelevant and under Evidence Code section 352. As to relevance in particular, the prosecutor argued: "Just because you consent to some sexual relationship at some point in your life doesn't mean you're giving consent to anybody to rape you. Just because she's a child, it doesn't change that fact."

The court agreed that "[c]onsent is not an issue" and asked Cruz to explain the relevance of the evidence. Cruz reiterated that the evidence was relevant to the force element of rape. Defense counsel explained: "I think the fact that within the same month that [Doe] has this abortion, she's having sexual relations with someone, there's no force involved, at least makes it tangentially relevant as to whether or not there was force involved in the previous time."

The court excluded the evidence about Lopez. It ruled that the evidence could not be used for impeachment or any other purpose.

B. *No Abuse of Discretion or Constitutional Violation*

The victim's lack of consent is an essential element of forcible rape. (§ 261, subd. (a)(2); *People v. Oliver* (2020) 54 Cal.App.5th 1084, 1095.) Consent "mean[s] positive cooperation in act or attitude pursuant to an exercise of free will. The person must act

freely and voluntarily and have knowledge of the nature of the act or transaction involved." (§ 261.6.)

In prosecutions for rape and certain other sex offenses, "California's rape shield law" renders inadmissible "specific instances of a complaining witness's sexual conduct . . . to prove consent by the complaining witness." (*People v. Fontana* (2010) 49 Cal.4th 351, 354 (*Fontana*), citing Evid. Code, § 1103, subd. (c)(1).) In adopting that rule, "the Legislature recognized that evidence of the alleged victim's consensual sexual activities with others has little relevance to whether consent was given in a particular instance." (*People v. Chandler* (1997) 56 Cal.App.4th 703, 707.)

However, evidence of the complaining witness's sexual conduct may be admissible to attack the witness's credibility. (*Fontana*, *supra*, 49 Cal.4th at p. 362.) If the defendant seeks to offer the evidence for that purpose, he or she must file a written motion and an affidavit setting forth an offer of proof. (Evid. Code, § 782, subd. (a)(1)-(2).) The court shall hold a hearing if it finds the offer of proof sufficient, and the defendant may question the complaining witness regarding the offer of proof. (Evid. Code, § 782, subd. (a)(3).) The court may admit the evidence if it finds the evidence relevant to the complaining witness's credibility, so long as the court also determines that the evidence is not inadmissible under Evidence Code section 352. (Evid. Code, § 782, subd. (a)(4).) The court has "broad discretion . . . to weigh the defendant's proffered evidence, prior to its submission to the jury, and to resolve the conflicting interests of the complaining witness and the defendant." (*People v. Rioz* (1984) 161 Cal.App.3d 905, 916.)

11

"The Legislature's purpose in crafting these limitations is manifest and represents a valid determination that victims of sex-related offenses deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy." (*Fontana*, *supra*, 49 Cal.4th at p. 362.) The courts must take "'[g]reat care . . . to insure that [the credibility] exception to the general rule barring evidence of a complaining witness'[s] prior sexual conduct . . . does not impermissibly encroach upon the rule itself and become a "back door" for admitting otherwise inadmissible evidence.'" (*Id.* at p. 363.) We review the trial court's decision to exclude evidence of the complaining witness's sexual conduct for abuse of discretion. (*Id*. at pp. 354, 369-370.)

Here, the trial court did not abuse its discretion by excluding evidence of Doe's relationship with Lopez. Cruz points out that the use of force or fear is an element of the rape counts and the forcible lewd act counts. (§§ 261, subd. (a)(2), 269, subd. (a)(1), 288, subd. (b)(1).) He argues that Doe's "consensual, nonforcible relationship" with Lopez was relevant to whether Cruz used force against her. But Lopez's lack of force was relevant in that sense only because of the inference that the trier of fact could draw about Doe's behavior—namely, that because she participated in consensual, nonforcible sexual conduct with Lopez, she may have done the same with Cruz. The rape shield law renders the evidence inadmissible for precisely that purpose.[2] (Evid. Code, § 1103, subd. (c)(1).)

---

[2] At the hearing on the Lopez evidence, Cruz argued that there was "no question" an 11-year-old "can't consent to anyone." To the extent that he was suggesting children cannot consent to sexual conduct as a matter of law, the parties did not treat Doe's lack of consent as conclusively presumed. The court instructed the jurors that the People had to prove lack of consent as an element of rape, and it instructed them on the definition of

12

The bar on using the victim's sexual conduct to prove consent applies in prosecutions for rape, but the rape shield law does not mention prosecutions for forcible lewd acts against a child. (Evid. Code, § 1103, subd. (c)(1); Pen. Code, § 288, subd. (b)(1).) That is likely because the victim's lack of consent is not an element of forcible lewd acts against a child, nor is the child's willingness a defense to the crime. (*People v. Soto* (2011) 51 Cal.4th 229, 238.) The child's consent or willing participation in the crime therefore is irrelevant. Accordingly, as to the forcible lewd act counts, the inferences about Doe's conduct that Cruz sought to draw from the Lopez evidence were irrelevant, and the court properly excluded the evidence on that ground.

Moreover, the court did not abuse its discretion by excluding the evidence to challenge Doe's credibility. Cruz argues that Doe's "lack of candor" about her relationship with Lopez was probative of whether she was candid about her sexual contacts with Perez and Cruz. But the probative value of the evidence in that respect was minimal. Doe explained the claimed inconsistency in her statements. She could recall only one instance of intercourse with Lopez, not three, but she was not denying that three instances occurred.

The minimal probative value of the evidence for impeachment purposes was substantially outweighed by the risk that the jurors would use the evidence for the improper purpose already discussed (as evidence of Doe's willing cooperation in the acts with Cruz). Admission of the evidence therefore risked "confusing the issues" and

consent (§ 261.6). The prosecutor argued in closing that Doe had not consented to intercourse.

13

"misleading the jury" into drawing an impermissible inference.  (Evid. Code, § 352.)  The court thus acted well within its discretion by excluding the evidence under Evidence Code section 352.  (See *Fontana*, *supra*, 49 Cal.4th at pp. 368-370 [holding that the court did not err under Evid. Code, § 352 by excluding evidence of the victim's sexual conduct].)

Finally, we reject Cruz's claim that the exclusion of the Lopez evidence violated his constitutional rights to present a defense and confront the witnesses against him.  (*Fontana*, *supra*, 49 Cal.4th at p. 370 [rejecting the same claim with respect to evidence of the victim's sexual conduct].)  The court's ruling excluded certain defense evidence but did not amount to a complete preclusion of a defense, so there was no violation of the right to present a defense.  (*People v. Cowan* (2010) 50 Cal.4th 401, 473.)  And there was no violation of the right to confrontation unless the Lopez evidence might have given "a reasonable jury . . . a significantly different impression" of Doe's credibility.  (*People v. Quartermain* (1997) 16 Cal.4th 600, 624.)  That was not the case here.  Doe's credibility was impeached by the evidence that she had lied to her foster mother and law enforcement about being sexually assaulted in 2016, and by the criminal offenses that she admitted in 2015, 2016, and 2019.  Any attempt to impeach her with her statements about Lopez would have added little to the other significant evidence impeaching her credibility.

For all of these reasons, the court did not abuse its discretion or deprive Cruz of his constitutional rights by excluding the evidence of Doe's relationship with Lopez.

III. *Full Consecutive Sentences Under Section 667.6, Subdivision (d)*

Cruz argues that the court erroneously imposed mandatory full consecutive sentences under section 667.6, subdivision (d) for two of the forcible lewd act counts (counts 4 & 6). He contends that full consecutive sentences were discretionary but not mandatory, so we must remand for the court to exercise its discretion. We agree.

Subdivisions (c) and (d) of section 667.6 set forth an alternative sentencing scheme for enumerated sex offenses, including forcible lewd acts on a child. (§ 667.6, subd. (e)(5) [including § 288, subd. (b)]; *People v. Price* (1984) 151 Cal.App.3d 803, 821.) Under section 667.6, subdivision (d), the trial court "shall" impose "full, separate, and consecutive term[s]" for each offense when "the crimes involve separate victims or involve the same victim on separate occasions." Under section 667.6, subdivision (c), "if the crimes involve the same victim on the same occasion," the court "may" impose "full, separate, and consecutive term[s]," but such a sentence is not mandatory. (Accord *People v. Pena* (1992) 7 Cal.App.4th 1294, 1317 [subd. (c) provides for discretionary, not mandatory, consecutive sentences].)

The probation report here recommended that the court sentence Cruz under section 667.6, subdivision (d), to full consecutive terms of 10 years on counts 4 and 6. The court stated that it intended to follow the probation officer's recommendation and sentenced Cruz accordingly. But the court did not specifically mention section 667.6, subdivision (d), and it did not make an express finding that the offenses in counts 4 and 6 occurred on separate occasions.

15

Cruz contends that the court merely followed probation's recommendation and "did not realize" that counts 4 and 6 occurred on the same occasion, meaning that he could not be sentenced under the mandatory provision. The People contend that Cruz forfeited the argument because he failed to object to the sentences on counts 4 and 6. The People further argue that the claimed error does not fall within the "narrow exception" to the forfeiture rule for an "'unauthorized sentence.'" (*People v. Scott* (1994) 9 Cal.4th 331, 354.) At least one court has rejected the same forfeiture argument, holding that if the defendant was correct that his offenses did not occur on separate occasions, the sentence under subdivision (d) of section 667.6 was unauthorized. (*People v. Garza* (2003) 107 Cal.App.4th 1081, 1091 (*Garza*).) Even if Cruz forfeited the argument, we exercise our discretion to reach the merits of the issue. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.)

"In determining whether crimes against a single victim were committed on separate occasions . . . , the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." (§ 667.6, subd. (d).)

"'[A] forcible violent sexual assault made up of varied types of sex acts committed over time against a victim . . . is not necessarily one sexual encounter.'" (*People v. Jones* (2001) 25 Cal.4th 98, 104.) The separate occasions test does not "require[] a break

16

of any specific duration or any change in physical location." (*Ibid.*) But in applying the separate occasions test, "courts have held, for example, the offenses of placing a finger in the victim's vagina, kissing her genitals and then placing his penis in her vagina were but a single occasion. [Citations.] Similarly, where a defendant raped the victim, then ""'got off of her, twisted her by the legs violently, and orally copulated her,'"" the offenses occurred on a single occasion." (*People v. Dearborne* (2019) 34 Cal.App.5th 250, 265-266 (*Dearborne*).) "In contrast, where the offenses are interrupted by the defendant's nonsexual activity, they occur on a separate occasion." (*Id.* at p. 266.)

We review the court's implied finding of separate occasions for substantial evidence, and we may reverse "only if no reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his assaultive behavior." (*Garza*, *supra*, 107 Cal.App.4th at p. 1092.)

Here, the record does not contain substantial evidence that the offenses in counts 4 and 6 occurred on separate occasions. In her closing argument, the prosecutor described counts 4 and 6 as the incident in which Cruz made Doe touch his penis and touched her genitals with his penis. Doe's forensic interview and testimony provided scant details about the incident. During the interview, she said that Cruz pulled down her shorts and underwear, pulled down his own shorts and underwear, and made her touch his penis. He grabbed her hand, and she moved it away "every time," but he would grab it harder. He also touched the outside of her genitals with his penis and kissed her chest and neck. When he left, he told Doe not to tell anyone, or he would "do something." At trial, she recalled Cruz pulling down her pants. Cruz's penis touched her genitals but did not

17

penetrate her. He grabbed her hands and held her down. He also made her touch his penis; she moved her hand away, and he pulled strongly on her hand and moved it back to his penis. He also kissed her neck.

It was unclear from Doe's statements whether any break at all, no matter what the duration, separated the lewd acts. Likewise, the duration of the incident as a whole was unclear. And there was no indication that the lewd acts were interrupted by some nonsexual activity. On this record, no reasonable factfinder could find that Cruz had a reasonable opportunity for reflection after completing one lewd act before resuming another. Any such finding would have been the result of pure speculation. (*People v. Waidla* (2000) 22 Cal.4th 690, 735 [speculation does not constitute substantial evidence].) Accordingly, the court's implied finding that Cruz committed the lewd acts on separate occasions was not supported by substantial evidence, and the court erred by sentencing Cruz under the mandatory provision (§ 667.6, subd. (d)).

The People do not argue that remand for resentencing would be an idle act, and the record does not permit us to "say with any certainty how the court would have decided to punish" Cruz under the discretionary provision. (*Dearborne*, *supra*, 34 Cal.App.5th at p. 266.) We therefore vacate Cruz's sentence and remand for the court to exercise its discretion under section 667.6, subdivision (c), on counts 4 and 6. (*Ibid.*) We express no opinion on how the court should exercise its discretion.

## DISPOSITION

Cruz's sentence is vacated. The matter is remanded for resentencing to allow the trial court to exercise its discretion in determining whether to sentence Cruz to full

18

consecutive terms under section 667.6, subdivision (c), on counts 4 and 6.  After resentencing, the court shall prepare an amended abstract of judgment and forward a copy to the California Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

FIELDS
Acting P. J.

RAPHAEL
J.

19