Filed 10/18/21  P. v. Reconco CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br>v.<br>DARWIN ADONIS RECONCO,<br>　　　Defendant and Appellant. | A157670<br><br>(Alameda County<br>Super. Ct. No. 17CR014977) |

Defendant Darwin Adonis Reconco appeals a judgment convicting him of four counts related to his sexual abuse of two children and sentencing him to a total term of 65 years to life in prison. He contends the court violated his constitutional rights by (1) instructing the jury on the use of expert testimony regarding the child sexual abuse accommodation syndrome pursuant to CALCRIM No. 1193 and (2) instructing the jury on the use of other charged sex crimes as propensity evidence pursuant to CALCRIM No. 1191B. He also argues that the court erred in sentencing him on one count and by failing to award presentencing custody credits on three counts. We agree that the matter must be remanded for resentencing on count 1, but shall affirm the judgment in all other respects.

1

## Background

Defendant was charged by information with oral copulation/sexual penetration against Doe 1, a minor age 10 or younger (count 1; Pen. Code,[1] § 288.7, subd. (b)); continuous sexual abuse of Doe 1 (count 2; Pen. Code, § 288.5, subd. (a)); continuous sexual abuse of Doe 2 (count 3; Pen. Code, § 288.5, subd. (a)); and lewd and lascivious act on Doe 2, a minor 14 years of age (count 4; Pen. Code, § 288, subd. (c)(1)). The information also alleged, among other things, as to counts two and three that defendant is subject to an indeterminate sentence of 25 years to life under the one-strike law (§ 667.61, subds. (a), (b), (c), (e)(4), and (j)(2)) and fully consecutive sentencing under section 667.6, subdivision (d). The jury found defendant guilty on the above charges and the court sentenced defendant to a total term of 65 years to life.[2]

At trial, evidence was presented that defendant lived with his wife and their children. Doe 1, who was 14 years old at the time of trial, was defendant's child from a prior relationship. Doe 2, who was 15 years old at the time of trial, was the wife's child from a prior relationship. The third victim alleged in the complaint, who was 19 years old at the time of trial, was defendant's child from a prior relationship. The couple also shared two children, who were 13 and 10 years old at the time of trial and who were not alleged to be victims of abuse.

Defendant's wife testified to uncharged allegations of sexual abuse made in 2010 by one of the younger sisters. The allegations were reported to the police and an investigation conducted. The wife took three of the girls out

---

[1] All statutory references are to the Penal Code unless otherwise noted.

[2] The information also alleged four counts of sexual abuse against a third victim that were dismissed after the jury was unable to reach a verdict.

2

of town for a few weeks but ultimately reconciled with defendant after he agreed to stop touching the girls inappropriately. Doe 1, however, due to custody issues, was placed in a foster home until 2012.

In May 2017, the youngest sisters reported to their school administration that defendant had sexually abused their sisters. A police investigation was commenced and defendant was arrested.

Doe 1 testified that on May 11, 2017, defendant placed his fingers into her vagina. Doe 1 testified further that defendant had been touching her in this way since 2013. She could not remember every incident but estimated he had abused her on 30 occasions. She testified in detail about the May 2017 incident, as well as to five prior incidents. She explained that she did not tell anyone about the abuse because she did not want to be placed in foster care again and taken away from her family. After she told her younger sister about the abuse, the sister reported it to her school administrators.

Having been informed of the abuse allegations, the vice-principal at Doe 2's school talked with Doe 2. While she was initially hesitant to say anything about the abuse, Doe 2 ultimately reported that defendant had been sexually abusing her.

At trial, Doe 2 testified that when her vice-principal approached her, she initially denied the abuse because she was afraid of what might happen to her family if the "truth" came out. After she told her vice-principal what defendant had done, however, she felt relieved that it might stop.

Doe 2 testified that defendant had sexually abused her a few days prior to the May 11 incident involving Doe 1. She detailed that incident as well as several others. Although she could not remember the details of every incident, she estimated that defendant put his fingers inside her vagina 10 times, touched her vagina on the outside about 30 times, touched her with his

penis, inside and outside her vagina, about 30 times each and touched her anal area with his penis, touched her breasts, and put his tongue in her mouth 20 times.

Dr. Blake Carmichael testified as an expert in child sexual abuse accommodation syndrome (CSAAS or the syndrome). He explained that CSAAS is not actually a syndrome, but a pattern of behavior of known sexual abuse of victims whose abuse has been independently established. The goal of the syndrome evidence is to help juries understand the behavior of sexual abuse victims and combat misconceptions about that behavior. He testified that the syndrome has five components, which may or may not be shown by a particular child. In general, they are secrecy, helplessness, entrapment and accommodation, delayed or unconvincing disclosure, and retraction. As relevant in this case, secrecy can be maintained where the child depends on the perpetrator for food, shelter, or emotional support, which gives the child a reason to keep the abuse a secret. In addition, children may want to keep it a secret to avoid breaking up a family. Child victims may feel helpless and paralyzed to do anything about the abuse because the abuse is happening in secret and the child is trapped in a relationship with the abuser. Accommodation occurs when children do "cognitive and emotional things" to deal with the abuse. One cognitive accommodation is disassociation, which the expert explained occurs when the child puts the peripheral details of the abuse "out of [their] brain." Finally, children often delay disclosure of abuse. The expert explained that only 20 percent of the child victims report it quickly and 40 to 60 percent do not report it within the first year, and that some research studies have shown up to 60 or 70 percent do not report the allegations until they are 18. The expert made clear that the syndrome is not a checklist for determining whether a child has been abused. Rather, these

4

components are intended to help "people understand why certain things might happen or a kid may do certain things or not do certain things after they've been sexually abused."

Defendant did not testify or call any witnesses. In closing, he relied on a photo exhibit in support of his argument that the allegations were implausible, given the described number of acts, the tight living situation, and the absence of any eyewitnesses to any of the alleged acts.

## Discussion

1. ***The jury was properly instructed on the use of the CSAAS evidence under CALCRIM No. 1193.***

Defendant does not challenge the admissibility of Dr. Carmichael's testimony. He recognizes that this court is bound by the decision of the California Supreme Court in *People v. McAlpin* (1991) 53 Cal.3d 1289, 1300, which approved a series of appellate decisions establishing the rule that "expert testimony on the common reactions of child molestation victims is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident . . . is inconsistent with his or her testimony claiming molestation."[3] He argues that the jury was not properly instructed on how to consider this evidence in its deliberations.[4]

---

[3] Defendant notes in his opening brief that Dr. Carmichael "testified that in his experience, children rarely make false allegations." The cited testimony occurred on cross-examination, in response to defense counsel's questions about the expert's experiences with children who have made false allegations and what various research studies have shown in that regard. Defendant has not challenged the admissibility of this testimony on appeal.

[4] We reject the Attorney General's argument that defendant forfeited the right to challenge CALCRIM No. 1193 by failing to object to it below.

The trial court instructed the jury pursuant to CALCRIM No. 1193, as follows: "You have heard testimony from Dr. Carmichael regarding child sexual abuse accommodation syndrome. [¶] Dr. Carmichael's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him. [¶] You may consider this evidence only in deciding whether or not [Doe 1 or Doe 2]'s . . . conduct was not inconsistent with the conduct of someone who has been molested and in evaluating the believability of his [*sic*] testimony."[5]

As reflected in this instruction, "CSAAS expert testimony is not admissible to prove the complaining witness has in fact been sexually abused. [Citation.] It is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident is inconsistent with her testimony claiming molestation. [Citation.] Such testimony is needed to disabuse jurors of commonly held misconceptions of child sexual abuse and the abused child's seemingly self-impeaching behavior." (*People v. Gonzales* (2017) 16 Cal.App.5th 494, 503.)

Defendant contends the language of CALCRIM No. 1193 allowed the CSAAS testimony to be used improperly as proof that the victims were molested. Initially, he argues that the pattern instruction permitted the jury

"Generally speaking, a 'failure to object does not waive an instructional error on appeal if the instruction was an incorrect statement of law or the defendant's substantial rights were affected.'" (*People v. Grandberry* (2019) 35 Cal.App.5th 599, 604.)

[5] As the Attorney General notes, the final sentence of the instruction should have read, "You may consider this evidence only in deciding whether or not [Doe 1 or Doe 2]'s . . . conduct was not inconsistent with the conduct of someone who has been molested and in evaluating the believability of [*their*] testimony." (Italics omitted & added.) Defendant does not argue that the mistaken use of "his" in the final sentence was likely to confuse the jurors or resulted in any prejudice to defendant.

to find that the victims' testimony was consistent with the behavior of a child molest victim, which improperly "invites a conclusion that they are child molest victims." He argues that the instruction fails to differentiate between proper use of the syndrome evidence—that is, whether behavior such as delayed disclosure makes the testimony of Does 1 and 2 less credible, and improper use of the CSAAS evidence to corroborate their molestation accounts. We disagree. The pattern instruction expressly states that the expert's "testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him." Moreover, Dr. Carmichael testified that he had never met the victims and had not reviewed their records. He was not asked to offer an opinion on whether their behavior was typical of abuse victims, "an issue closely related to the ultimate question of whether abuse actually occurred." (*People v. Housley* (1992) 6 Cal.App.4th 947, 958.) Rather, as noted above, Dr. Carmichael expressly warned that CSAAS is not a "checklist or tool law enforcement or anybody can use to say a child was abused."

Defendant also argues that the instruction is "improperly one-sided" because it offers the jury an option to find Doe 1 and 2's conduct consistent with that of a child sexual abuse victim but says nothing about the other possible inference—that the delayed or inconsistent disclosure, or their maintaining a relationship with defendant for years during the alleged abuse—shows that their account is untrue. There is, however, no need to instruct the jury on any alternative inferences it might draw from the children's delayed reporting or continued relationship with defendant. The instruction told the jury to consider "*whether or not*" the conduct "was not inconsistent with the conduct of someone who has been molested." If the jury deemed the conduct inconsistent with the conduct of a molested person, it

7

necessarily would follow that the conduct tended to indicate that the molestation had not occurred. Neither expert testimony nor any further explanation was necessary to make this clear, and the instruction did not imply either conclusion.

Defendant's arguments have repeatedly been rejected by other courts. (See *People v. Munch* (2020) 52 Cal.App.5th 464, 474; *People v. Gonzales*, *supra*, 16 Cal.App.5th at p. 504.) In *Munch*, defendant made the argument that CALCRIM No. 1193 " 'effectively instructs the jury that they may take [the expert's] testimony as evidence of the defendant's guilt' " because "instructing jurors that they may use it 'in evaluating the believability' of the child's testimony means they will improperly use it to find the defendant is guilty." (52 Cal.App.5th at p. 474.) The court disagreed explaining, " 'The purpose of CSAAS is to understand a child's reactions when they have been abused. [¶] A reasonable juror would understand CALCRIM No. 1193 to mean that the jury can use [the expert's] testimony to conclude that [the child's] behavior does not mean she lied when she said she was abused. The jury also would understand it cannot use [the expert's] testimony to conclude [the child] was, in fact, molested. The CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior. Thus, under CALCRIM No. 1193, a juror who believes [the expert's] testimony will find both that [the child's] apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does not show she had been molested. There is no conflict in the instruction.' " (*Ibid.*, italics omitted, quoting *People v. Gonzales*, *supra*, 16 Cal.App.5th at p. 504.)

We agree that CALCRIM No. 1193 is a correct statement of the law and sufficiently advises the jury that the syndrome evidence may not be used to prove that defendant committed any of the charged crimes. Defendant

8

suggests that the double negative in the final sentence, "not inconsistent with," is confusing and "means exactly the same thing as 'consistent with.'" Even if the final sentence is understood to read "You may consider this evidence only in deciding whether or not [Doe 1 or Doe 2]'s conduct was consistent with the conduct of someone who has been molested, and in evaluating the believability of [their] testimony," it would still be a correct statement of the law. In other words, if the jury finds that the victims' behavior is consistent with conduct exhibited by other child victims of sexual assault, the jury may use that finding in evaluating whether the victims' conduct in this case—that is, their delayed reporting and failure to remember all the details—is an indication that they are lying about the abuse. Nothing in the instruction permits the jury to conclude that because the victims' behavior is consistent (or not inconsistent) with that of other child victims of sexual assault, defendant necessarily abused them.[6]

Defendant also suggests that the prosecutor used the expert's testimony as circumstantial evidence that the allegations of Doe 1 and Doe 2 were true. To the contrary, the prosecutor only briefly addressed Dr. Carmichael's testimony in closing argument. She summarized his testimony and explained that Dr. Carmichael's testimony was intended to give the jury

---

[6] Although the instruction is literally accurate and consistent with prior decisions of California courts, we do perceive a possibility of it being misunderstood. We suggest that consideration be given to modifying CALCRIM No. 1193 to incorporate explicit language drawn from CALJIC No. 10.64 or from the CSAAS instruction given in New Jersey before the New Jersey Supreme Court limited use of CSAAS evidence (see *State v. J.L.G.* (2018) 234 N.J. 265 [190 A.3d 442]), both of which tend to make the distinction between the proper and improper use of the evidence somewhat clearer. The limitations on the use of child sexual abuse accommodation evidence thoughtfully discussed in the New Jersey opinion also merits careful consideration by our Supreme Court.

"a different way to think about [child sexual abuse]" and to provide context for understanding "the relationship between this child and the offending parent." In discussing the girls' inability to remember all of the details of the abuse, she referenced Dr. Carmichael's testimony and argued that they only remember some details of the abuse "because it was specific and it was different. But on all the other times, it happened the same way."

## 2. CALCRIM No. 1191B

The jury was instructed with CALCRIM No. 1191B as follows: "The People presented evidence that the defendant committed the crimes of Penal Code section 288(a) charged in counts 1 through 8. [¶] If the People have proved beyond a reasonable doubt that the defendant committed one or more of these crimes, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit the other sexual offenses in this case. [¶] If you find that the defendant committed one or more of these crimes, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of another crime. The People must still prove each charge and allegation beyond a reasonable doubt."

Defendant contends the instruction improperly lowered the prosecution's burden of proof. Defendant concedes, however, that the California Supreme Court has approved the use of this instruction in the face of similar arguments (*People v. Villatoro* (2012) 54 Cal.4th 1152) and that this court is bound by that decision (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450). At his request, we note his argument for the record for subsequent consideration by the California Supreme Court and federal courts.

10

3. ***The matter must be remanded for resentencing***.

Defendant's 65-year-to-life term was calculated as follows: On count one (§ 288.7, subd. (b), sexual penetration of Doe 1, a child age 10 or under) the court imposed a term of 15 years to life. On count two (§ 288.5, subd. (a), continuous sexual abuse of Doe 1), which included a multiple victim allegation (§ 667.61, subd. (j)(2)), the court imposed a term of 25 years to life. On count three (§ 288.5, subd. (a), continuous sexual abuse of Doe 2) which also included a multiple victim allegation, the court imposed a term of 25 years to life. On count four (§ 288, subd. (c)(1), lewd and lascivious act on Doe 2) the court imposed a term of two years.[7] The sentencing brief submitted by the prosecutor asserted that "pursuant to Penal Code section 667.6(d), counts 1, 2, 3 must run consecutive to one another." In imposing fully consecutive terms on the first three counts the court followed this advice, explaining, "With respect to the serving or how these sentences are to be served, the court will impose the following sentence: As to counts 1, 2 and 3, Penal Code section 667.6(d), and these offenses fall within the umbrella of that section, [which] states that, '[a] full separate and consecutive term shall be imposed for each violation of an offense specified in subdivision (e) if the crimes involve separate victims.' Obviously given the facts of this case and the evidence that was presented to this court and to the jury, that language

---

[7] As explained by the prosecutor in closing, count 1 is based on the first incident of abuse against Doe 1, which she testified occurred before her ninth birthday. Count 2 encompasses acts against Doe 1 occurring between the ages of 9 and 12. Count 3 encompasses all acts against Doe 2 before her 14th birthday and count 4 is based on the May 2017 incident that occurred after she was 14.

applies." On count 4, the court stated it would "impose but stay the midterm of two years."[8]

Defendant contends and the Attorney General concedes that the court's "articulation of the applicable sentencing law is incorrect with respect to count one." The parties agree that section 667.6, subdivision (d) does not apply to section 288.7, subdivision (b) offenses. As the trial court correctly noted, section 667.6, subdivision (d) provides for mandatory consecutive sentences only if the offense is listed in subdivision (e) of section 667.6 and the crimes involved separate victims or the same victim on separate occasions. Section 288.7, however, is not an enumerated offense under section 667.6, subdivision (e).

Defendant argues that because the court was unaware of its discretion to impose concurrent rather than consecutive sentences his case must be remanded so the court may exercise an informed discretion. The Attorney General agrees that the record indicates the trial court may have misunderstood its authority to impose a concurrent term, but argues that defendant is not entitled to the requested relief because he forfeited his claim by not objecting to the imposition of consecutive sentences below.

---

[8] The abstract of judgment indicates, we believe incorrectly, that the sentence on count 4 was stayed under section 654. While the court indicated the term was stayed, the parties both characterize the sentence imposed on count 4 as a concurrent term. This confusion can be resolved on remand. At the same time, the court can confirm that defendant is entitled to 772 days of actual custody credit, 116 days of conduct credit against the determinate term in count 4, but no conduct credit against the indeterminate life terms in counts 1 through 3. (See *People v. Adams* (2018) 28 Cal.App.5th 170, 182 ["[D]efendants given indeterminate terms under section 667.61 are not entitled to any presentence conduct credit."]; *People v. Dearborne* (2019) 34 Cal.App.5th 250, 267-268 [same].) While defendant contends that these decisions were incorrectly decided and should not be followed, we find their reasoning sound.

Alternatively, the Attorney General asserts that remand is unnecessary because the record shows the court would not have imposed a lesser sentence. Defendant concedes that his trial counsel did not object to the consecutive sentence but argues that whether viewed directly or as a claim for ineffective assistance of counsel, the error is prejudicial.

The court's comments at sentencing regarding the aggravating and mitigating circumstances reflect the serious nature of the offenses.[9] Nonetheless, given the court's treatment of count 4, we believe the matter should be remanded for resentencing on count 1.

### Disposition

We conditionally reverse and remand the matter for a new sentencing hearing at which the trial court shall exercise its discretion to impose consecutive or concurrent sentences on count 1. In all other respects, the judgment is affirmed.

---

[9] The court noted that, in its opinion, the acts disclosed a high degree of callousness; both victims were particularly vulnerable; the evidence indicates that the crimes were planned; and defendant took advantage of a position of trust to commit these crimes. The sole factor in mitigation cited by the court was defendant's lack of a prior criminal record. The court also added, "As to factors to be considered with respect to the imposition of concurrent or consecutive sentences, which are outlined in rule 4.425 [of the California Rules of Court], the court would note that Penal Code sections 667.6 and 667.61 outline factors or the court's approach to full, separate and consecutive sentences with regard to offenses of this nature. Additionally, I would note that pursuant to California Rule of Court 4.425(a)(2) and (3), counts 2 and 3 are considered violent felonies and these crimes were committed at different times and places over a wide time span."

POLLAK, P. J.

WE CONCUR:

STREETER, J.
ROSS, J.*

---

*Judge of the Superior Court of California, County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.