Filed 4/3/23  P. v. Wong CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HOWARD ROGER WONG,<br><br>    Defendant and Appellant. | 2d Crim. No. B318239<br>(Super. Ct. No. 17CR07379)<br>(Santa Barbara County) |

Howard Roger Wong appeals from the judgment entered after a jury found him guilty of seven counts of committing a lewd or lascivious act upon his daughters, M. and A.  As to M., the jury found appellant had committed four lewd acts while she was under the age of 14 years.  (Counts 1-4; Pen. Code, § 288, subd. (a).)[1]  As to A., the jury found he had committed one lewd act while she was under the age of 14 years (count 5) and two lewd

---

[1] All undesignated statutory references are to the Penal Code.

acts while she was 14 or 15 years old.  (Counts 6-7; § 288, subd. (c)(1).)

The jury found true an allegation that in the present case appellant had been convicted of committing a violation of section 288, subdivision (a) against more than one victim.  (§ 667.61, subds. (b), (c)(8), (e)(4).)  A person who has been so convicted "shall be punished by imprisonment in the state prison for 15 years to life."  (*Id*., subd. (b).)  This is "known as the 'One Strike' law."  (*People v. Mancebo* (2002) 27 Cal.4th 735, 738; see *People v. Perez* (2015) 240 Cal.App.4th 1218, 1223 ["Since its adoption in 1994, California's One Strike law (§ 667.61) has set forth an 'alternative and harsher sentencing scheme for certain sex crimes'"].)  The trial court sentenced appellant to prison for a determinate term of three years, eight months on counts 6 and 7, followed by an aggregate indeterminate term of 75 years to life on counts 1-5 (five consecutive terms of 15 years to life for the five one-strike convictions).  The court ordered appellant to pay noneconomic damages of $500,000 to each daughter.

Appellant contends: (1) he was denied effective assistance of counsel because counsel failed to exclude polygraph evidence; (2) the matter must be remanded for resentencing because the trial court was not aware it had discretion to impose concurrent terms for the five one-strike convictions; (3) the three-year upper term sentence on count 6 must be reversed because the jury did not find any aggravating circumstances that would warrant imposition of the upper term; (4) the trial court erroneously failed to award him conduct credits for presentence custody; (5) the sentencing minute order and abstract of judgment must be amended to conform to the court's oral pronouncement of judgment; and (6) the award of noneconomic damages to M. must

2

be reversed because the record does not contain a factual basis for the award.

We vacate the 75-year-to-life aggregate prison sentence for the five one-strike convictions (counts 1-5). We remand the matter for resentencing on these convictions so that the trial court may exercise its discretion whether to impose concurrent or consecutive terms. We order the trial court to amend the sentencing minute order and abstract of judgment to conform to its oral pronouncement of judgment. We reverse the award of noneconomic damages to M. and direct the trial court to conduct a new restitution hearing to determine the amount of noneconomic damages, if any, to which she is entitled. In all other respects, we affirm.

*Facts*

<u>Incidents Involving M.</u>

At the time of trial, M. was 15 years old. She testified that when she was three to five years old, appellant would come into her bedroom at night and would "rub [her] bum." When she was in second grade, appellant "pulled on [her] crotch." "It was near [her] private parts."

On many occasions appellant "rub[bed her] butt." "He would . . . go under [her]underwear and start rubbing there . . . ."

M. estimated that appellant had touched her inappropriately more than 50 times. "[S]ometimes it would happen . . . multiple times a week. And . . . sometimes it would happen . . . once a week maybe."

Diane Ozolins, a "child forensic interviewer," interviewed M. when she was 12 years old. M. said that, when she was eight or nine years old, appellant would "slide his hand into [her] underwear and start[] []rubbing [her] butt." Sometimes he would

3

also rub her "private area and press down."  "It hurt" when he "pressed down."  Appellant touched M. under her underwear "[a] lot."  She "just thought it was normal because he's my dad."

<u>Incidents Involving A.</u>

A. is six years older than her sister, M.  At the time of trial, A. was 21 years old.  When she was about 13 years old, appellant came into her bedroom at night, pulled down her tank top and bra, and "actually sucked on [her] nipple."  A. was in bed and "pretended" to be "asleep."

A few months later, appellant walked into A.'s bedroom and "briefly started to rub [her] stomach up and down."  A. was awake and lying in bed.  She assumed appellant "thought [she] was asleep."  A. noted that she is "a heavy sleeper" and will "sleep through the fire alarm that's right by [her] room."  Appellant ran "his hand under [her] pajama shorts and did not penetrate [her] vagina but . . . rubbed up against it for a brief second and pulled his hand out."

A third, final incident occurred when A. was in bed after 9:00 p.m.  She was awake, but appellant "was under the impression that [she] was asleep."  A. testified: appellant "reach[ed] into my waistband of my pants.  And instead of just rubbing his hand up against my vagina, he actually penetrated it with his finger."  "[I]t was mildly painful."  "So in my head, going to sleep meant that my dad was going to hurt me as a kid."

As to the third incident, appellant told Detective Matt Banks that he was sitting on the bed next to A.  He was "tryin' to help her go to sleep."  While rubbing the back of her leg, his hand accidentally "slipped into her shorts" and may have penetrated her vagina.  When he removed his hand from her shorts, it was wet.  Appellant later said that, although he did not know where

4

his hand had gone, because it was wet he was "assuming" it had penetrated A.'s vagina.

*Appellant's Testimony*

Appellant was 58 years old at the time of trial in September 2021. He testified that at his daughters' request, he would give them back rubs at night if they had difficulty falling asleep. "[R]ubbing their backs calmed them down and they went to sleep." He never rubbed M.'s "butt" or touched her "in the vaginal area." He did not touch A.'s vagina, suck on her nipple, or "penetrate her." A. "has a history of lying."

Appellant continued: "I had this dream, . . . nightmare that I . . . potentially could have touched [A.] And I was shocked." "[Detective] Banks asked me if my fingers were wet . . . . [Y]eah, they were wet in the dream. Not in reality. In reality I never, ever would have done that."

*Polygraph Evidence*

During his interrogation of appellant, Detective Banks repeatedly asked appellant to take a polygraph examination. Appellant was familiar with such examinations. He had taken them in connection with his employment.

Appellant was reluctant to take a polygraph examination. He explained to Detective Banks: "I would think I would pass it. But in all honesty right now with all . . . that's been going on and how upset I am I don't know. I actually fear that I won't pass it. Not because I've done anything. It's because . . . this is upsetting." "I'm so upset about this I – I really am afraid I'm gonna fail it."

Toward the end of the interrogation, appellant agreed to take a polygraph examination and asked Banks to "[s]et it up."

5

Banks replied that he would schedule the examination for the following day.

A video of the interrogation was played for the jury, which was provided with a transcript of the interrogation. Both the video and transcript were redacted to delete all references to the term "polygraph." Despite the redaction, it was obvious that Detective Banks and appellant were discussing a polygraph examination. The trial court stated, "Detective Banks was suggesting . . . that [appellant] agree to take a polygraph. I can't imagine [how] even the most naive of our jurors could have missed that."

*Appellant's Motion for a Mistrial and*
*Trial Court's Curative Instruction*

Pursuant to Evidence Code section 351.1, "polygraph evidence . . . is categorically inadmissible" in criminal trials unless the parties stipulate to its admission. (*People v. Wilkinson* (2004) 33 Cal.4th 821, 845.) Inadmissible polygraph evidence includes "any reference to an offer to take" or "failure to take . . . a polygraph examination." (Evid. Code, § 351.1, subd. (a).) "Polygraph evidence is inadmissible because of the lack of scientific certainty about the results and also because lay persons tend to invest such evidence with an inordinately high degree of authority." (*People v. Lee* (2002) 95 Cal.App.4th 772, 792.)

Appellant's counsel did not object to the video before it was played or while it was being played for the jury. After it had been played, he moved for a mistrial. The prosecutor protested: "[L]ast year . . . we gave [counsel] transcripts with proposed redactions. He . . . had those for over a year and a half . . . ." Counsel "never made any objection until the day *after* the interview was

6

played . . . ." He "watched two hours of a recorded interview, with transcript in hand, and did not object as he listened to the faulty redactions."

The trial court denied the motion for a mistrial. It gave the following admonition to the jury:

"Ladies and gentlemen of the jury, the Court is concerned regarding some possible misinformation that you, the jury, may be under the impression of. On the videotapes of the defendant's interviews with Detective Banks, you have heard statements that implied or suggested that there had been discussions regarding the possibility of polygraph examinations.

This Court wants you to know that the United States Supreme Court as well as the California State Supreme Court have both ruled that polygraph tests are not admissible in Court because they are not accepted scientifically as being accurate.

This is a subject that under no circumstance should enter into your considerations in this case. Evidence of polygraph examinations are simply investigative tools. They are not, therefore, admissible in criminal cases by law.

The defendant, Mr. Wong, *at no time refused to take any such examination, and no polygraph examinations were ever conducted in this matter*. [Italics added.] You may not consider these statements to suggest as true any results of any polygraph examination, the opinion of any polygraph examiner, or any reference to any offer to take, or any failure to take, a polygraph examination.

The Court is telling you, as jurors, you must not discuss these issues nor allow them to enter into your deliberations, nor affect your verdict in a[ny] way whatsoever. You must not speculate nor consider any such suggestions for any purpose.

7

If any one of you is concerned in even the slightest way that you may have some difficulty following the Court's admonition, it is extremely important for the Court, for the attorneys, and for Mr. Wong to be informed of your concerns immediately.  We would appreciate it, if that is the case with you, that you would write a note to [the] Bailiff . . . telling him that you wish to speak with us outside the presence of the other jurors, and I will make that happen at the next recess."

*Defense Counsel's Failure to Exclude Polygraph Evidence Did Not Deny Appellant His Right to Effective Assistance of Counsel*

Appellant maintains, "The judgment must be reversed because trial counsel provided ineffective assistance when he failed to ask the trial court to exclude all references and discussions . . . stemming from Banks' requests that appellant submit to a polygraph."  (Bold and capitalization omitted.)

"Establishing a claim of ineffective assistance of counsel requires the defendant to demonstrate (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result. [Citations.]  A 'reasonable probability' is one that is enough to undermine confidence in the outcome." (*People v. Dennis* (1998) 17 Cal.4th 468, 540-541.)  "If a claim of ineffective assistance of counsel can be determined on the ground of lack of prejudice, a court need not decide whether counsel's performance was deficient." (*In re Crew* (2011) 52 Cal.4th 126, 150.)

Appellant '"must establish "prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel. . . ."'" (*In re Cox* (2003) 30 Cal.4th 974,

8

1016.) Appellant failed to carry his burden of showing that counsel's allegedly deficient performance prejudiced him. The trial court's admonition to the jury cured any prejudice arising from the polygraph evidence. The court instructed the jury that appellant had not refused to take a polygraph examination and that no such examination had been conducted. Based on this instruction, there was no danger that the jury would infer that appellant had refused to take the examination or had taken it and failed. "Where polygraph evidence has been erroneously introduced, [our Supreme] [C]ourt has held that 'a trial court's timely admonition, which the jury is presumed to have followed, cures prejudice resulting from the admission of such evidence.'" (*People v. Thompson* (2016) 1 Cal.5th 1043, 1121.)

Appellant expressed fear that he would not pass a polygraph examination. However, appellant made clear that this fear arose not out of concern that he would be caught lying, but out of concern that the reliability of the polygraph would be compromised by his emotionally distraught condition caused by his daughters' accusations. In any event, the court gave a strong instruction directing the jury to disregard all evidence relating to discussions about taking a polygraph examination. "'""[W]e must assume that jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given." . . ."'" (*People v. Landry* (2016) 2 Cal.5th 52, 95.) "[W]e and others have described the presumption that jurors understand and follow instructions as '[t]he crucial assumption underlying our constitutional system of trial by jury.' [Citations.] We see no reason to abandon the presumption in this case, where the relevant instructional language seems clear and easy to understand." (*People v. Yeoman* (2003) 31 Cal.4th 93, 139.)

9

*The Matter Must be Remanded for Resentencing Because*
*The Trial Court Apparently Was Not Aware It Had Discretion*
*To Impose Concurrent Terms for the One Strike Convictions*

In counts 1 through 5, appellant was convicted of violating section 288, subdivision (a).  Under the one strike law, each of the five convictions was punishable by imprisonment for 15 years to life.  (§ 667.61, subds. (b), (c)(8), (e)(4).)  The information alleged that "a full, separate and *consecutive* term shall be imposed [on each one-strike conviction] pursuant to Penal Code section 667.6."  (Italics added, bold omitted.)

During the sentencing hearing, the prosecutor informed the trial court that it was required to impose a consecutive 15-year-to-life prison term for each one strike conviction, totaling 75 years to life for all five convictions.  The prosecutor said: "[T]he sex crime sentencing which is under [section] 667.6(d) mandates fully consecutive sentences. . . .  Each are 15 to life and are fully consecutive to one another."  Neither defense counsel nor the trial court disputed the prosecutor's interpretation of section 667.6, subdivision (d).[2]  The trial court said it was "going to follow the recommendation" as "outlined in the probation report."  The probation report recommended "a determinate term of 3 years, 8 months [on counts 6-7] followed by an indeterminate term of 75 years to life [on counts 1-5]."

In its appellate brief the People insist that the prosecutor correctly interpreted section 667.6, subdivision (d).  The People are mistaken.  Section 667.6, subdivision (d) is inapplicable.  It provides, "A full, separate, and *consecutive* term shall be imposed for each violation of an offense specified in subdivision (e) if the

_____

[2] The People do not claim that defense counsel's failure to object constituted a forfeiture of the issue.

10

crimes involve separate victims or involve the same victim on separate occasions." (Italics added.) A violation of section 288, subdivision (a) is not among the offenses specified in subdivision (e).

The People allege, "[Section 667.6,] subdivision (e) provides that '[t]his section shall apply to the following offenses: . . . (8) 'Lewd or lascivious act, in violation of subdivision (a) of Section 288.'" Section 667.6, subdivision (e)(8) does not so provide. Subdivision (e)(8) applies to "[s]exual penetration, in violation of subdivision (a) or (g) of Section 289." (*Ibid*.) The People apparently meant to refer to section 667.6, subdivision (e)(5), which provides, "Lewd or lascivious act, in violation of *subdivision (b)* of Section 288." (Italics added.) But appellant was not convicted of violating section 288, subdivision (b), which applies to "[a] person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim . . . ." (*Id*., subd. (b)(1).) Appellant was convicted of violating section 288, subdivision (a).

The People refer to section 667.6, subdivision (e)(6), but this subdivision is also inapplicable. It applies to a conviction of "[c]ontinuous sexual abuse of a child, in violation of Section 288.5." (*Ibid*.) Appellant was not convicted of this offense.

In any event, "section 667.61, subdivision (i), not section 667.6, subdivision (d), applies to sentencing under the one strike law." (*People v. Lopez* (2022) 76 Cal.App.5th 287, 292.) Section 667.61, subdivision (i) provides: "For any offense specified in paragraphs (1) to (7), inclusive, of subdivision (c), or in paragraphs (1) to (6), inclusive, of subdivision (n), the court shall impose a consecutive sentence for each offense that results in a

11

conviction under this section if the crimes involve separate victims or involve the same victim on separate occasions as defined in subdivision (d) of Section 667.6." A violation of section 288, subdivision (a) is not specified in paragraphs (1) to (7) of subdivision (c) of section 667.61. It is specified in paragraph (8) of subdivision (c). Such a violation is also not specified in subdivision (n) of section 667.61. Thus, "the trial court had discretion to impose concurrent sentences on [appellant's one strike] convictions." (*Lopez, supra*, at p. 291; see also *People v. Woodworth* (2016) 245 Cal.App.4th 1473, 1479 (*Woodworth*) ["'Absent an express statutory provision to the contrary, section 669 provides that a trial court shall impose either concurrent or consecutive terms for multiple convictions'"].)

It appears that the prosecutor, together with the probation report, mis-advised the trial court to believe it lacked discretion to impose concurrent terms for the one strike convictions. The probation report erroneously stated that section 667.61, subdivisions (b) and (e)(4) applied to these convictions. Subdivision (e)(4) applies to a violation of section 288, subdivision (b), not subdivision (a). Pursuant to section 667.61, subdivision (i), consecutive sentencing is mandatory for a violation of section 288, subdivision (b). It is not mandatory for a violation of section 288, subdivision (a).

The probation report did not state reasons for imposing consecutive sentences for the one strike convictions. On the other hand, it stated reasons for imposing consecutive sentences on counts 6 and 7, which did not involve the one strike law. The absence of reasons in the probation report for imposing consecutive sentences for the one strike convictions may have

12

misled the trial court to believe that reasons were unnecessary because consecutive sentences were mandatory.

If the court believed it had discretion to impose concurrent sentences for the one strike convictions on counts 1-5, it should have stated its reasons for exercising discretion to impose consecutive sentences. (Cal. Rules of Court, rule 4.406(b)(5) ["Sentence choices that generally require a statement of a reason include . . . [i]mposing . . . consecutive sentences"].)[3] "As a general rule, the selection between consecutive or concurrent sentences constitutes a discretionary sentence choice for which the trial court must state reasons on the record." (*People v. Gulbrandsen* (1989) 209 Cal.App.3d 1547, 1552.) "When a consecutive sentence . . . is mandatory there is no choice to be made and hence a statement of reasons justifying the selection of the compelled sentence is not required." (*Id.* at p. 1553.) We presume the court was aware of the rule that reasons must be stated for imposing consecutive sentences unless consecutive sentences are mandatory. (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496 ["The general rule is that a trial court is presumed to have been aware of and followed the applicable law"].)

"'Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. [ Citations.] Defendants are entitled to "sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court," and a court that is unaware of its discretionary authority cannot exercise its informed

---

[3] All references to rules are to the California Rules of Court.

discretion.'" (*Woodworth, supra,* 245 Cal.App.4th at p. 1480.) Accordingly, we "will remand the matter to the trial court for resentencing so it can exercise its sentencing discretion" whether to impose concurrent or consecutive sentences for the one strike convictions. (*Ibid.*)

*Sentence Imposed on Count 6: Effect of Senate Bill No. 567*

On count 6 appellant was convicted of committing a lewd act upon A. while she was 14 or 15 years old in violation of section 288, subdivision (c)(1). Count 6 was based on the second incident when appellant rubbed A.'s vagina but did not penetrate it. The trial court sentenced appellant to prison for the upper term of three years. Count 7 alleged another violation of section 288, subdivision (c)(1). The violation was based on the last incident when appellant penetrated A.'s vagina. On count 7 the trial court sentenced appellant to prison for a consecutive term of eight months – one-third the two-year middle term.

Appellant was sentenced in February 2022. Senate Bill No. 567 (2021-2022 Reg. Sess.) became effective on January 1, 2022. (Stats. 2021, ch. 731, § 1.3.) "'Senate Bill No. 567 . . . amended section 1170, subdivision (b), making the middle term of imprisonment the presumptive sentence.' [Citation.] 'A trial court may impose an upper term sentence only where there are aggravating circumstances in the crime and the defendant has either stipulated to the facts underlying those circumstances or they have been found true beyond a reasonable doubt.'" (*People v. Berdoll* (2022) 85 Cal.App.5th 159, 163 (*Berdoll*).)

At the sentencing hearing appellant's counsel stated, "[T]here's been an amendment to [section] 1170[, subdivision (b)]. . . . We cannot do the upper term because that is now an issue for the jury to find aggravating factors to justify the upper term.

14

And the jury never found any aggravating factors. So you are limited . . . to the mid or low terms. That's the new law that went into effect." The prosecutor replied that the new law does not apply because the jury rendered its verdict before the new law became effective. The court imposed the upper term on count 6 as recommended by the probation report. The court said, "Without repeating so much that is outlined in the probation report and recommendation, . . . the Court is going to follow the recommendation . . . ."

Appellant contends the upper term sentence on count 6 must be reversed because the jury did not find any aggravating circumstances. The People concede that the amendment of section 1170, subdivision (b) applies to appellant. But they argue that any error in imposing the upper term was harmless "because it is [certain] beyond a reasonable doubt that the jury would have found all the aggravating circumstances true beyond a reasonable doubt."

The only mitigating circumstance mentioned in the probation report is that "[t]he defendant has no prior [criminal] record." The probation report listed the following four aggravating circumstances, which it said "are applicable to both counts 6 and 7": "1. The victim [A.] was particularly vulnerable [Rule 4.421(a)(3)]. [¶] *The victim was vulnerable at the time of the offenses due to her age, naivete, inexperience, relative size and strength and the defendant's position of authority over her.* [¶] 2. The manner in which the crime was carried out indicates planning, sophistication or professionalism [Rule 4.421 (a)(8)]. [¶] *The defendant waited until the victim was presumably asleep*

15

*to commit the crimes.*[4] . . . [¶] 3. The defendant took advantage of a position of trust or confidence to commit the offense [Rule 4.421(a)(11)]. [¶] *The defendant took advantage [of] his role as the victim's father whom the victim trusted.* [¶] 4. The defendant has engaged in violent conduct that indicates a serious danger to society [Rule 4.421(b)(1)]." (Bracketed references to rules in original; other bracketed material added.) Appellant maintains "there is no evidence supporting" the fourth aggravating circumstance.

"'"[I]f a reviewing court concludes, beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury," the error is harmless. . . .'" (*Berdoll, supra,* 85 Cal.App.5th at p. 163, quoting from *People v. Flores* (2022) 75 Cal.App.5th 495, 500.) "On this record we are satisfied, beyond a reasonable doubt, the jury would have found true [the first three] aggravating circumstance[s] [listed in the probation report]. . . . Thus, remand for resentencing on this issue is unnecessary." (*Flores, supra,* at p. 501.) "To remand [on this issue] would achieve the same sentencing result and would be a waste of judicial resources." (*Berdoll, supra,* at p. 165.)[5]

---

[4] At the sentencing hearing, A. said: "[M]y father molested me when he thought I was asleep. I was an extremely good sleeper, so I will never know if there are more incidents of molestation when I truly was asleep. And that is a question . . . [that] eats at me daily."

[5] The parties observe that appellate courts are divided on the standard for assessing prejudice when determining whether a case should be remanded for resentencing in light of Senate Bill

*Conduct Credits*

Appellant maintains that the trial court erroneously failed to award him conduct credits for his 127 days of presentence custody.  The court accepted the probation officer's determination that appellant "is not entitled to conduct credits pursuant to" *People v. Dearborne* (2019) 34 Cal.App.5th 250.  There, the court held that defendants sentenced to indeterminate terms under the one strike law of section 667.61 are not entitled to presentence conduct credit.  (*Dearborne,* at pp. 267-268.)  The same holding was reached in *People v. Adams* (2018) 28 Cal.App.5th 170, 182-183.

There is no reason to depart from the holdings of *Dearborne* and *Adams*.  We recognize that the determinate sentence of three years, eight months on counts 6 and 7 was not imposed pursuant to the one strike law.  But appellant is not entitled to conduct credit as to the determinate sentence.  "A period of presentence confinement is indivisibly attributable to all of the offenses with which the prisoner is charged and of which he is eventually convicted."  (*In re Reeves* (2005) 35 Cal.4th 765, 775.)  The trial court is not required "to parse such a single, unitary period of

---

No. 567.  (See, e.g., *People v. Lopez* (2022) 78 Cal.App.5th 459, 465-466 ["In order to conclude that the trial court's reliance on improper factors that were not found true by a jury or admitted by Lopez was not prejudicial, we would have to conclude beyond a reasonable doubt that a jury would have found true beyond a reasonable doubt *every factor on which the court relied*"].)  The issue is pending before our Supreme Court in *People v. Lynch* (May 27, 2022, C094174) [nonpub. opn.], review granted Aug. 10, 2022, S274942.

17

presentence confinement into hypothetical, overlapping terms eligible to earn credit at different rates." (*Ibid.*)

*Amendment of Minute Order and Abstract of Judgment*

The minute order for the sentencing proceedings conducted on February 3, 2022, shows that appellant was ordered to pay to his former spouse, E.S., restitution of "$1,171,206 . . . and amount to be determined." The abstract of judgment incorporates the alleged order.

Appellant claims, and the People concede, that in its oral pronouncement of judgment the trial court made no such restitution order. We accept the concession. Accordingly, we will direct the trial court to strike from the minute order and abstract of judgment the reference to restitution payable to E.S. (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2 ["The record of the oral pronouncement of the court controls over the clerk's minute order"].)

*Award of Noneconomic Restitution to M.*

"[V]ictims may . . . recover '[n]oneconomic losses, including, but not limited to, psychological harm, for felony violations of Section 288.' (§ 1202.4, subd. (f)(3)(F).)" (*People v. Lehman* (2016) 247 Cal.App.4th 795, 801.) There is a constitutional right to restitution. (Cal. Const., art. 1, § 28(b)(13).) The trial court awarded M. "non-economic damages" of $500,000. Appellant contends "the award of non-economic restitution to M[.] must be reversed because the record contains no evidence providing a factual basis supporting the amount the court awarded her."

The trial court also awarded A. noneconomic damages of $500,000. Appellant does not contest the validity of this award because A. appeared in person at the sentencing hearing and described in detail the harmful psychological impact of her

father's molestation. She also wrote a three-page letter to the court. M. did not appear at the sentencing hearing and did not provide any statement, written or oral, concerning the psychological impact of appellant's molestation.

The People's response to appellant's contention is perfunctory and conclusionary: "Here, the trial court ordered appellant to pay $500,000 in victim restitution to M.[] for the noneconomic losses that she sustained as a result of appellant's multiple violations of section 288, subdivision (a). Nothing more was required." The People cite no authority in support of their assertion that "[n]othing more was required."

We disagree with the People. More was required. "Section 1202.4 does not provide guidelines for evaluating a child victim's noneconomic damages for sexual abuse. Unlike economic damages, which encompass 'objectively verifiable monetary losses' (Civ. Code, § 1431.2, subd. (b)(1)), noneconomic damages compensate the victim for 'subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation.' (Civ. Code, § 1431.2, subd. (b)(2) . . . .) The trial court has broad discretion to choose a method for calculating the amount of restitution, but it must employ a procedure that is rationally designed to determine the victim's losses. [Citation.] The court 'must demonstrate a rational basis for its award, and ensure that the record is sufficient to permit meaningful review. The burden is on the party seeking restitution to provide an adequate factual basis for the claim.'" (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1182 (*Valenti*).)

The probation report did not recommend that the court award noneconomic damages of $500,000 to each of appellant's daughters. The award was based on the People's motion. The motion stated, "[T]he People will ask the Court to award non-economic damages to the victims of the defendant's repeated acts of molestation in the amount of $500,000 per victim." In support of the motion, the People attached only an excerpt from "the California Judges Benchguide: Restitution, Section 83.75." "The People did not submit any support for the figures, or attempt to explain why the same formula should apply to each victim . . . . The record contains no victim declarations [from M.], independent documentation, or professional evaluations." (*Valenti*, *supra*, 243 Cal.App.4th at p. 1182.)

We understand why appellant decided not to contest A.'s noneconomic damage award of $500,000. Based on her trial testimony and oral statement at the sentencing hearing, the court reasonably concluded that she was entitled to this amount. At the sentencing hearing A. stated in part: "What my father did to me has caused an amount of pain, trauma, and fear. Having to relive it during the trial was a huge setback for me even after years of counseling. Being sexually assaulted and molested . . . is something that will follow me wherever I go, no matter how much guidance I seek. . . . [¶] . . . I will never get full closure. . . . [¶] . . . It's hard to put into words the effects of his actions. Besides flashbacks, nightmares, anxiety attacks, countless nights of not being able to sleep. It is hard to describe the betrayal, the hurt, anger, suffer[ing], and distress, and the heartache of losing my father and yet longing to have my father at the same time. [¶] . . . [¶] It's something I battle with regularly. The PTSD [Post-Traumatic Stress Disorder] I have been diagnosed with

20

that stems from the sexual assault is kind of like a double punishment. Your body was violated in unimaginable ways but then you[r] mind will never let you forget."

During the trial, A. testified that at one point she was so "overwhelmed with the situation" that she had attempted suicide by taking "quite a few pills of my Wellbutrin prescription."[6] She "end[ed] up at Cottage Hospital."

In contrast to A., we have nothing from M. describing the impact on her of appellant's molestation. "[T]he court in this case did not find facts, cite reliable evidence, or even explain how it arrived at the [same] amount of restitution [for] each victim. [As to M.], [t]here was no evidence, either through direct testimony or victim-impact statements, that [she] suffered nightmares or flashbacks, that [she was] having trouble in school or problems making friends, that [she] had considered harming [herself] or others, or that [she] had sought or received counseling in any form. . . . Because the court did not 'demonstrate a rational basis for its award' [to M.] or 'ensure that the record is sufficient to permit meaningful review,' we reverse the award[] [of restitution to M.] . . . and remand with directions to hold a [new] restitution hearing." (*Valenti, supra*, 243 Cal.App.4th at pp. 1183-1184.)

*Disposition*

The 75-year-to-life aggregate prison sentence for the five one-strike convictions (counts 1-5) is vacated. The matter is remanded for resentencing on these five convictions. The trial court shall exercise its discretion whether to impose concurrent or consecutive sentences. If it imposes consecutive sentences, it

---

[6] We take judicial notice that Wellbutrin is the brand name for bupropion, an antidepressant medication. (Evid. Code, §§ 452, subd. (h), 459.)

21

must state on the record its reasons for doing so. (Rules 4.406(b)(5), 4.425.) We express no opinion as to how the court should exercise its discretion.

As to M. only, the order awarding noneconomic damages (§ 1202.4, subd. (f)(3)(F)) is reversed. The matter is remanded with directions to conduct a new restitution hearing to determine the amount of noneconomic damages, if any, to which M. is entitled. The court must assure that the record is sufficient to permit meaningful review.

In all other respects, the judgment is affirmed. The trial court is directed to strike from the sentencing minute order and abstract of judgment the reference to restitution payable to E.S. After appellant is resentenced and restitution is determined as to M., the trial court shall prepare an amended abstract of judgment and send a certified copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


                                                    YEGAN, J.

We concur:


        GILBERT, P. J.


        BALTODANO, J.

22

Thomas R. Adams, Judge

Superior Court County of Santa Barbara

_____

George L. Schraer, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Ryan M. Smith, Deputy Attorney General, for Plaintiff and Respondent.