Filed 2/26/25  P. v. Yaoch CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NGIRMANG YAOCH,<br><br>Defendant and Appellant. | C098829<br><br>(Super. Ct. Nos. 2021CR0050622 & CR039442) |

A jury convicted defendant Ngirmang Yaoch of two counts of aggravated sexual assault of a child (one by means of rape and the other by means of sodomy) and two counts of lewd acts upon a child.  The court sentenced defendant to two consecutive indefinite terms, one for each assault, with additional one-year enhancements, and two concurrent eight-year terms for the lewd acts.  The court also ordered defendant to pay the victim $50,000 in noneconomic damages.

1

Defendant contends the trial court erred by failing to instruct the jury on unlawful sexual intercourse as a lesser included offense of aggravated sexual assault by means of rape. He also contends he was denied his Sixth Amendment right to counsel during sentencing and challenges the consecutive terms, the one-year enhancements, and the $50,000 in noneconomic damages. And he points to two errors in the abstract of judgment.

We agree there are abstract of judgment errors and accept the People's concession that the one-year enhancements should be stricken. But we find no merit in defendant's other contentions. We order modifications to the judgment and otherwise affirm. Undesignated statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

I

*The Incidents*

In December 2021, victim was 13 years old and living with her grandmother. Defendant (age 37), a good friend of victim's mother, had moved in with minor and grandmother the month before.

Victim had known defendant for around six months. He sometimes watched movies with her and was like a friend. Victim did not notice defendant being flirtatious with her.

Victim received a new Polaroid camera and wanted to use all the film, so she "came up with . . . stupid ideas like in front of the Christmas tree or . . . in the kitchen or like kind of a mustache or having a photo bomb." She also took pictures of herself with defendant. Polaroids of defendant were found in victim's room on her mirror. Another polaroid of defendant with victim was found in defendant's room in the border of a computer screen.

According to a statement victim made to law enforcement, defendant came into her room one evening in mid-December and "fondled her breasts, humped her, and . . .

2

did terrible things to her." At trial, victim testified that defendant touched her upper half and her lower bottom. She did not recall reporting that humping occurred. Victim didn't tell her grandmother about defendant's actions "right away" because "it just seemed like just like too big of a deal to be cared about."

Two nights later, victim accepted defendant's invitation to smoke marijuana with him in his room. After smoking, victim went back to her room and went to sleep. When she woke, she was face down on her pillows and defendant "was on top of [her] or on the back of [her]." Victim felt penetration in her butthole for a short amount of time. Then defendant tried to move her, almost pushing her off the bed. "[T]hen he got [her] back up on the bed and . . . switched [] to [her] vagina." He didn't say anything to victim while this was happening, but at the end, "[h]e said that he came in [her]."

Victim testified that she didn't give defendant permission to do these things and wasn't able to push defendant off because "it felt like . . . his legs were squeezing [her] whole bottom half." Later that day, victim told grandmother what happened, and grandmother went to law enforcement. But victim didn't tell anyone she had been smoking marijuana with defendant because she was scared she would get in trouble.

An expert found defendant's semen in victim's underwear. Another expert conducted a forensic medical exam of victim and made "no findings" for "abuse slash assault" because he did not see any abrasions, lacerations, or bruising. He also testified that (1) it was extremely common to conduct a sexual assault forensic exam and have no relevant findings and (2) the lack of a finding does not determine whether an assault occurred.

Defendant stipulated that he was aware of victim's age and denied ever touching her inappropriately.

## II

### *The Charges and the Verdict*

Defendant was charged with aggravated sexual assault of a child by means of rape (§§ 269, subd. (a)(1); 261, subd. (a)(2)), aggravated sexual assault of a child by means of sodomy (§§ 269, subd. (a)(3); 286, subd. (c)(2)(B)), and two counts of lewd acts upon a child under age 14 (§ 288, subd. (a)).[1] As alternatives to the aggravated sexual assault counts, he was charged with rape (§ 261, subd. (a)(2)) and sodomy (§ 286, subd. (c)(2)(B)). The charges also included one-year enhancement allegations for the aggravated sexual assaults and the alternative rape and sodomy counts (§ 667.9, subd. (a)).

The jury instructions on rape and sodomy included the advisement that defendant was not guilty of those offenses if he actually and reasonably believed that victim consented to his acts. The jury was also instructed on the lesser included offenses of unlawful sodomy (§ 286, subd. (b)) and simple assault (§ 240).

In closing argument, defense counsel admitted that defendant had intercourse with victim, but counsel questioned whether the prosecution had proven victim's lack of consent or defendant's lack of a reasonable belief in victim's consent beyond reasonable doubt. Counsel argued that victim "was more than just friends" with defendant and did not want to get in trouble for having that relationship. In support, counsel relied on: (1) victim's delay in disclosing defendant's lewd acts because "she didn't think it was a big deal"; (2) her decision to smoke marijuana with defendant in his room a day or two after the lewd acts; (3) her omission of the marijuana fact from her initial accounts of the events; (4) the polaroids in defendant's and victim's rooms; and (5) the lack of obvious injury from victim's forensic exam.

---

[1] Defendant was also charged with rape of an unconscious or asleep person (§ 261, subd. (a)(4)), but the court later dismissed that charge at the prosecution's request.

The jury found defendant guilty of both counts of aggravated sexual assault and both counts of lewd acts. It also found the enhancement allegations true.

III

*Sentencing*

The parties stipulated to re-calendar the sentencing hearing set for May 2023 to the following month. Judge pro tempore Stephen Bradbury presided over the re-calendared hearing. The judge acknowledged that he didn't hear the case and stated he would be relying on the information provided in the probation report and the arguments of counsel.

The probation report recommended concurrent terms for the aggravated sexual assaults and one-third of the midterm for each lewd act conviction to also run concurrently. It also recommended awarding victim $25,000 for noneconomic losses while noting that no number could quantify the trauma she suffered.

In a sentencing brief, the prosecution (1) argued for consecutive terms on the aggravated assault convictions, (2) suggested either consecutive or concurrent terms for the lewd act convictions, (3) requested $50,000 in victim restitution, noting that victim was going to counseling, and (4) asked for the court to "reserve jurisdiction over restitution in an amount and manner to be determined should the costs be calculated."

At the hearing, grandmother read a letter from victim's mother addressed to defendant explaining the effect of defendant's acts on victim. The letter stated, in pertinent part: "The damage you did to my daughter was life altering, both physically and emotionally. You took away her innocence during her adolescence. You hurt her. After what you did, my daughter can no longer see her own friends or even go, go to her own school. Her social and educational life dropped significantly all because of you. . . . [¶] . . . My daughter cannot even walk down the street or go to a store without reminders of who we thought you were. . . . [¶] . . . Her trust in men has been damaged and will take years to regain. What you have done is something she and our family will have to live

5

for the rest of our life.  I know that moving forward from what you have done will take years . . . ."

Grandmother also read her own letter stating that victim "will never stop fighting for those girls, women, who have been victimized. . . .  She will not let the incident dictate who she is, but every day get stronger to know that no one can take away what belongs to her – her dignity, strength, beauty and confidence.  [Victim] is a survivor who refuses to be shamed in silence."

The prosecutor then argued for consecutive terms on the aggravated assaults, citing the jury's finding of guilt on both counts and victim's testimony that she had nearly fallen off the bed between the sodomy and the rape.  The prosecutor stated that one-third of the midterm for the lewd acts would not run concurrently and recommended full terms for those offenses if the trial court opted for concurrent terms.

Defense counsel agreed that the court had "limited discretion on some of these things."  In particular, he agreed that the court was bound to impose consecutive sentences on the aggravated assaults.  He asked the court to run the remaining charges concurrently, citing defendant's lack of criminal history, his appearance on the lower end of a recidivism test, and the indeterminate terms for the other counts.

The court agreed that consecutive terms were appropriate after finding there was "time to consider and reflect and act upon the same between the . . . sodomy and vaginal penetration."  It sentenced defendant to:  (1) an indeterminate term of 15 years to life for the rape-based sexual assault (§ 269, subd. (a)(1)) with an additional 1-year term pursuant to section 667.9; (2) a consecutive indeterminate term of 15 years for the sodomy-based sexual assault (§ 269, subd. (a)(1)) with an additional 1-year term pursuant to section 667.9; (3) a concurrent 8-year term for one of the lewd acts; and (4) another concurrent 8-year term for the other lewd act.  The court awarded defendant 615 days of custody credit and ordered $50,000 in restitution to victim for noneconomic losses.  A single abstract of

judgment contains both the indeterminate and determinate sentences and reflects 611 days of custody credit.

Defendant timely appealed.

DISCUSSION

I

*Unlawful Sexual Intercourse Instruction*

Defendant contends the trial court committed prejudicial error by failing to instruct the jury on unlawful sexual intercourse (§ 261.5) as the lesser included offense of aggravated sexual assault by rape. The People contend the court had no duty to provide this instruction and any error was harmless. We conclude any error was harmless.

Reversal of a conviction due to failure to instruct is warranted only if " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*People v. Watson* (1956) 46 Cal.2d 818, 837.) In making that determination, we do not focus on " 'what a jury *could* have done' " but rather on " 'what a jury would *likely* have done if properly instructed.' " (*People v. Larsen* (2012) 205 Cal.App.4th 810, 831.) We "consider the instructions as a whole, the jury's findings, and the closing arguments of counsel." (*Ibid*.)

Here, the jury was instructed regarding unlawful sodomy, aggravated sexual assault by means of sodomy, and aggravated sexual assault by means of rape. But it was not instructed regarding unlawful sexual intercourse. The relevant difference between these offenses is that the act in aggravated sexual assault must be accomplished without consent by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury. (§§ 261, subd. (a)(2); 286, subd. (c)(2).) In defendant's view, the unlawful sexual intercourse instruction was warranted because victim "testified that [defendant] did not speak to her in forceful tones, did not threaten her, and did not employ any

7

physical force greater than was necessary to accomplish the sexual acts."[2] But these factual assertions would also be true of defendant's act of sodomy. This point is significant because the jury was instructed regarding unlawful sodomy and nevertheless found defendant guilty of aggravated sexual assault by sodomy. So, we find no reason to think that defendant's assertions regarding lack of force would fare any better with the jury with respect to the rape. The jury also heard defendant's closing argument that victim was more than friends with defendant, but the jury rejected this version of events and found defendant guilty of aggravated sexual assault by sodomy, not the lesser included offense of unlawful sodomy. Given these circumstances, we do not see a reasonable probability that defendant would have obtained a more favorable result had the jury been instructed regarding unlawful sexual intercourse.

## II

### *Assistance of Counsel at Sentencing*

Defendant contends he suffered the "equivalent" of a complete denial of counsel at sentencing due to defense counsel's "inaction" and is entitled to a new sentencing hearing under *United States v. Cronic* (1984) 466 U.S. 648, 659 (*Cronic*). He argues, "[t]he sentencing judge, who was not the trial judge, imposed consecutive indeterminate sentences of 15 years to life, an invalid sentence enhancement, and a factually unsupported $50,000 restitution order," and defense counsel "offered no opposition to

---

**2** In determining whether a rape occurred, the jury does not determine whether force facilitated sexual penetration or prevented the victim from physically resisting her attacker. (*People v. Griffin* (2004) 33 Cal.4th 1015, 1027.) Instead, the jury determines whether the use of force served to overcome the will of the victim to thwart or resist the attack. (*Ibid*; see, e.g., *People v. Thomas* (2017) 15 Cal.App.5th 1063, 1071 [" 'Force' includes circumstances where the victim did not want to engage in the act and the evidence does not otherwise establish the victim's positive cooperation in act or attitude"].)

any of these invalid sentencing decisions" and "went even one step further, and voiced his *support* for the court's decision to impose consecutive indeterminate terms." We disagree that defense counsel completely failed to represent defendant at sentencing and reject his right-to-counsel and right-to-effective-counsel (the latter citing *Strickland v. Washington* (1984) 466 U.S. 668) arguments.

Although a defendant must generally show prejudice to establish ineffective assistance of counsel (*Strickland v. Washington, supra*, 466 U.S. at p. 688), prejudice is presumed in certain cases, including when defense "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." (*Cronic, supra*, 466 U.S. at p. 659.) But to trigger this aspect of *Cronic*, the defense counsel's failure must be complete. (*Bell v. Cone* (2002) 535 U.S. 685, 697; see *Schmidt v. Foster* (7th Cir. 2018) 911 F.3d 469, 498 [only deprivations "on par with total absence" trigger the *Cronic* presumption of prejudice].) Such complete failures "occur[] so rarely as to be almost nonexistent." (*People v. Ruiz* (2023) 89 Cal.App.5th 324, 331.)

Here, defense counsel did not completely fail to represent defendant at sentencing. Defense counsel was not completely inactive, nor did he wholly fail to prepare for sentencing. (*People v. Ruiz, supra*, 89 Cal.App.5th at pp. 331-333 [defense counsel was completely inactive during hearing due to effects of brain tumor]; *Lewis v. Zatecky* (7th Cir. 2021) 993 F.3d 994, 1006 [defense counsel wholly failed to prepare for or participate in the defendant's sentencing].) The prosecution's sentencing brief put consecutive terms for the lewd acts at issue, and defense counsel advocated for concurrent terms by reminding the court of defendant's lack of criminal history and low chance of recidivism. Defense counsel also had a potential tactical reason for staying silent as to the noneconomic damages. At the hearing, the prosecution did not reiterate its request for those damages or for the court to reserve jurisdiction on damages and potentially impose an even higher figure in the future. (§ 1202.4, subd. (f); *People v. Martinez* (2017) 8 Cal.App.5th 298, 305 [child sexual abuse results in long-term emotional and

9

psychological damage if left untreated].)  This leads us to conclude that defense counsel's silence is not without rational explanation.  (*People v. Majors* (1998) 18 Cal.4th 385, 403.)  For these reasons, we reject defendant's contention.

## III

### *Consecutive Sentencing*

Defendant contends he received ineffective assistance of counsel because his trial counsel conceded that consecutive terms were appropriate for the aggravated sexual assault convictions.  We exercise our discretion to adjudicate this claim on the merits.  (*People v. Marlow* (2004) 34 Cal.4th 131, 150).)

Consecutive terms for aggravated sexual assault convictions are required if the crimes involve "the same victim on separate occasions."  (§ 269, subd. (c).)  In making this determination, the court must consider whether, between the commission of one sex crime and another, "the defendant had a reasonable opportunity to reflect upon the defendant's actions and nevertheless resumed sexually assaultive behavior."  (§667.6, subd. (d)(2).)  When a trial court imposes consecutive sentences, a reviewing court may reverse "only if no reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his assaultive behavior."  (*People v. Garza* (2003) 107 Cal.App.4th 1081, 1092 (*Garza*).)  That standard of reversibility has not been met here.

"Under the broad standard established by . . . section 667.6, subdivision (d), the Courts of Appeal have not required a break of any specific duration or change in physical location."  (*People v. Jones* (2001) 25 Cal.4th 98, 104.)  This is because "a forcible violent sexual assault made up of varied types of sex acts committed over time against a victim, is not necessarily one sexual encounter.  Such a sexual assault . . . is not motivated by sexual pleasure.  Instead, it is frequently intended to degrade the victim."  (*People v. Irvin* (1996) 43 Cal.App.4th 1063, 1071.)  "Therefore, at sentencing a trial court could find a defendant had a 'reasonable opportunity to reflect upon his or her

10

actions' even though the parties never changed physical locations and the parties 'merely' changed positions." (*Ibid.*) Courts have found such an opportunity to reflect when the defendant stops his sexually assaultive behavior, even for only a moment, and then resumes that behavior. (See, e.g., *People v. King* (2010) 183 Cal.App.4th 1281, 1290 [between acts of digital penetration, the defendant saw the lights of a passing car, removed his fingers from the victim's vagina, looked around uneasily and then inserted fingers from his other hand]; *Garza, supra*, 107 Cal.App.4th at p. 1092 [between digital penetration and rape, the defendant played with the victim's chest, put his gun on the back seat, and pulled the victim's legs around his shoulders]; *People v. Plaza* (1995) 41 Cal.App.4th 377, 384 [the defendant's assaultive sexual behavior stopped as he pushed the victim into the bedroom, forced her on the bed, grabbed her by the throat, ripped off her underwear, and inserted his fingers into her vagina].)

Here, a reasonable trier of fact could find a reasonable opportunity for defendant to reflect on his actions between his anal and vaginal penetrations. Victim testified that in between those acts, defendant was trying to move her, almost pushed her off the bed, and then got her back on the bed and switched to her vagina. A reasonable trier of fact could find a reasonable opportunity for defendant to reflect on his actions as victim nearly fell off the bed. This was more than simply flipping the victim over as the defendant did in *People v. Pena* (1992) 7 Cal.App.4th 1294, 1316.

Nevertheless, defendant takes issue with his trial counsel's concession at the sentencing hearing. He insists that his counsel should have advocated for the court to apply *Pena* or cases in which the People conceded the offenses occurred on a single occasion. (See *People v. Corona* (1988) 206 Cal.App.3d 13, 18 [respondent conceded single occasion where the defendant put his finger in the victim's vagina, then kissed her genitals, and then put his penis in her vagina]; *People v. Dearborne* (2019) 34 Cal.App.5th 250, 265-266 [respondent conceded single occasion where the defendant orally copulated the victim, then raped her].) But we presume the court knew of these

cases and reached the reasonable conclusion that they were unpersuasive or distinguishable. (*People v. Presley* (2021) 65 Cal.App.5th 1131, 1143.) Also, defense counsel may have reasonably concluded that an argument in favor of a single occasion finding would be futile in light of victim's testimony and *King*, *Garza*, *Plaza* and *Irvin*. (See *People v. Ramirez* (2003) 109 Cal.App.4th 992, 1002 [counsel not ineffective for failing to raise futile objections]; *People v. Montoya* (2007) 149 Cal.App.4th 1139, 1147-1148 [competent counsel should realistically examine the case and pursue those avenues of defense that, to their best and reasonable professional judgment, seem appropriate under the circumstances].) As a result, we find no merit in defendant's ineffective assistance of counsel claim.

IV

*Noneconomic Damages*

Defendant contends the record lacks evidence to support the $50,000 noneconomic damage award. We disagree.

Trial courts are required to award full restitution in every case in which a crime victim suffers a loss. (*People v. Giordano* (2007) 42 Cal.4th 644, 656.) That restitution includes noneconomic losses, including, but not limited to, psychological harm, for felony violations of section 288, 288.5, or 288.7. (§ 1202.4, subd. (f)(3)(F) (the noneconomic restitution provision).) Such noneconomic damages compensate the victim for " 'subjective, nonmonetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation, and humiliation.' " (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1182 (*Valenti*).)

A court may award restitution even if a victim does not initiate the request. (§ 1202.4, subd. (f); *People v. Selivanov* (2016) 5 Cal.App.5th 726, 784.) " '[S]omeone,' such as the People, may initiate the restitution process on behalf of a victim." (*Selivanov*, at p. 785.) The party seeking restitution has the burden of proof by a preponderance of

the evidence, but "the evidentiary bar is a low one" (*People v. Gomez* (2023) 97 Cal.App.5th 111, 119), particularly in the case of noneconomic losses. "Unlike restitution for economic loss, . . . loss for noneconomic [harm] is subjectively quantified." (*People v. Smith* (2011) 198 Cal.App.4th 415, 436.) As a result, there is no fixed standard for deciding the amount of these damages. (*Ibid*.) Also, the statute "does not require any particular kind of proof to establish a victim's losses." (*People v. Lehman* (2016) 247 Cal.App.4th 795, 803.) But some evidence of harm incurred by the particular victim of the crime is required. (*Gomez*, at p. 118.) We review a restitution order for abuse of discretion. (*Lehman*, at p. 801.)

Relying on *Gomez* and *Valenti*, defendant contends there was no evidence to support the award here.[3] But *Gomez* and *Valenti* are distinguishable. In *Valenti*, the only information about the victims was filtered through the parents who reported their belief that the victims "did not sustain actual child abuse," and were doing "fine" or "excellent." (*Valenti, supra*, 243 Cal.App.4th at pp. 1182-1183.) And in *Gomez*, the lone statement of impact was that the defendant was a "setback" for the victim, with no elaboration or connection to the underlying crimes. (*People v. Gomez, supra*, 97 Cal.App.5th at p. 118.) By contrast here, the prosecution argued that victim had been going to counseling and victim's mother submitted a letter for the sentencing hearing regarding the negative, long-term subjective effects of defendant's actions on victim. These statements provided substantial evidence to support the award. (See *People v. Johnson* (1980) 26 Cal.3d 557, 578 [substantial evidence is evidence that is reasonable, credible, and of solid value].)

---

[3] Defendant does not contend the amount of the award was excessive, so we do not reach that issue. (*People v. Gomez, supra*, 97 Cal.App.5th at p. 116, fn. 4 [standard for excessive restitution award does not apply where challenge is to factual basis for award]; see also *People v. Smith* (2011) 198 Cal.App.4th 415, 436 [we "affirm a restitution order for noneconomic damages that does not, at first blush, shock the conscience or suggest passion, prejudice[,] or corruption on the part of the trial court"].)

Grandmother's statement that victim would "not let the incident dictate who she is" did not contradict those statements and was not analogous to the statements in *Valenti* that the victims were doing fine or had not suffered abuse.

Defendant asks us to focus on (1) victim's testimony during trial that she did not think defendant's lewd acts were a big deal and (2) victim's decision to smoke marijuana with defendant a day or two after those acts. In his view, this evidence shows that the lewd acts had no effect on victim, and the restitution judge never considered this evidence because he was not the trial judge and limited his view to the probation report and the arguments of counsel.[4] But defendant makes too much of victim's testimony. She testified that she told grandmother about the lewd incidents the day after they happened rather than the day of, and she explained her state of mind at the time. We do not understand her testimony to be that the lewd acts had no long-term impact on her. The same is true of victim's decision to join defendant for marijuana a day or two after the acts occurred. This decision does not reflect the long-term subjective impact of defendant's lewd acts on victim.

Finally, defendant contends that the evidence of victim's damage was not specific to the violations that make noneconomic damages possible in this case, the section 288 violations. We reject this contention. Defendant's effort to escape noneconomic damages because he committed aggravated sexual assault a few days after the lewd acts is untenable. Such a result rewards defendants for committing additional sexual offenses. Also, "[s]everal appellate courts have interpreted [the noneconomic restitution provision] as embracing felony convictions for *conduct* violating section 288, even if the

---

[4] As a general matter, it is not error for a judge other than the one who tried a criminal case to pronounce judgment and sentence. (*People v. Downer* (1962) 57 Cal.2d 800, 816.) Defendant does not challenge having a different judge preside over sentencing and restitution. (See, e.g., *People v. Jacobs* (2007) 156 Cal.App.4th 728, 738.)

14

convictions themselves were under different statutes." (*People v. Villegas* (2023) 97 Cal.App.5th 253, 280.)  This is because the noneconomic restitution provision requires a *violation* of section 288, rather than a conviction.  (*Villegas,* at p. 280; see *People v. McCarthy* (2016) 244 Cal.App.4th 1096, 1103-1106.)  Here, given the jury's finding of guilt as to the lewd acts (that requires defendant's specific intent to arouse, appeal to, or gratify his or victim's lust, passions, or sexual desires (§ 288, subd. (a))), and the evidence that defendant returned to victim's room one or two nights after those acts, penetrated her anus and vagina, and told her he "came in [her]," it is inconceivable that the jury could have found defendant guilty of violating section 269 without also finding that he committed those penetrations with the same intent required to violate section 288, subdivision (a).  (See *Villegas*, at p. 282; *People v. Gonzalez* (2012) 211 Cal.App.4th 132, 137 [sexual intercourse with a minor under 14 can be prosecuted as a lewd act on a child under section 288, subdivision (a)].)

For these reasons, the record supports the $50,000 noneconomic damage award.

V

*One-Year Enhancements*

Under section 667.9, a person who commits certain enumerated crimes against a child under 14 years of age must receive a one-year enhancement for each violation. Defendant contends that although rape and sodomy are enumerated crimes in section 667.9, aggravated sexual assault is not.  The People concede that the one-year enhancements were unauthorized.  We see no reason why the one-year enhancement in section 667.9 would be added to the sentence imposed under section 269.  (Cf. *People v. Glass* (2004) 114 Cal.App.4th 1032, 1036-1037 [5-year enhancement in section 12022.8 serves a different purpose from section 269]; *People v. Jimenez* (2000) 80 Cal.App.4th 286, 291 [section 667.6 and section 269 serve two different objectives].)  We accept the People's concession and strike these enhancements from defendant's sentence.  (*People v. Scott* (1994) 9 Cal.4th 331, 354; *People v. Potts* (2019) 6 Cal.5th 1012, 1054, 1062

15

[striking section 667.9 enhancements].)  Defendant does not point to any discretion the trial court would have left to exercise, so remand for resentencing is unnecessary. (*People v. Harbison* (2014) 230 Cal.App.4th 975, 986.)

## VI

### *Abstract of Judgment Errors*

We agree with defendant that there should be two abstracts of judgment, one for defendant's determinate terms and the other for defendant's indeterminate terms. (§ 1213.5 [abstract of judgment].)  Also, the abstract must be modified to reflect the correct number of custody credits that is 615 days.  (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647 [custody credit].)

## DISPOSITION

The judgment is modified to (1) strike the two one-year enhancements imposed under section 667.9 and (2) reflect 615 days of custody credits.  The trial court is directed to prepare two abstracts of judgment with those modifications, one for the indeterminate terms and the other for the determinate terms.  The trial court shall forward a copy of the modified abstracts to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


/s/
MESIWALA, J.


We concur:


/s/
EARL, P. J.


/s/
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.